IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>    Plaintiff,<br><br>v.<br><br>KARL R. HADE, in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia,<br><br>SERVE:    Karl R. Hade<br>              Executive Secretary<br>              Office of Executive Secretary<br>              Supreme Court of Virginia<br>              100 North Ninth Street<br>              Richmond, Virginia 23219<br><br>and<br><br>JACQUELINE C. SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia,<br><br>SERVE:    Jacqueline C. Smith, Clerk<br>              Prince William County<br>               Circuit Court<br>              9311 Lee Avenue<br>              Manassas, Virginia 20110<br><br>    Defendants. | Civil Action No. 3:21-cv-00460 |

**COMPLAINT**
**ALLEGING VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983**
**AND SEEKING INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Courthouse News Service ("CNS"), by and through its undersigned attorneys, alleges the following in support of its Complaint for Injunctive and Declaratory Relief against Defendant Karl R. Hade, in his official capacity as Executive Secretary (the "Executive Secretary")

of the Office of Executive Secretary of the Supreme Court of Virginia ("OES"), and Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia ("Prince William Clerk," and with the "Executive Secretary," the "Defendants").

**INTRODUCTION**

1. In the Virginia Circuit Court system, one segment of the public – Virginia-licensed attorneys – are given remote electronic access to civil, nonconfidential, public court filings via the internet, including documents in cases in which they are not attorneys of record, through a system called the Virginia Officer of the Court Remote Access ("OCRA"). Meanwhile, the public and press – including CNS, a news service specializing in news reporting about the courts, and whose reporters cover the Virginia courts on a daily basis – are effectively denied this remote access and, as a result, must bear a greater burden and expense, and delays, to access these same civil, nonconfidential, public court filings.

2. In denying OCRA access to CNS, the clerks of some Virginia Circuit Courts have relied on Virginia Code § 17.1-293(B), which provides, in relevant part, that "no court clerk shall post on the internet any document that contains the following information: (i) an actual signature, (ii) a social security number, (iii) a date of birth identified with a particular person, (iv) the maiden name of a person's parent so as to be identified with a particular person, (v) any financial account number or numbers, or (vi) the name and age of any minor child." The law provides an exception for "members in good standing with the Virginia State bar and their authorized agents." Va. Code Ann. § 17.1-293(E)(7).

3. The Prince William Clerk, for example, provides Virginia-licensed attorneys – but not the press or the public – with more favorable OCRA subscriber access. In January 2018, the Prince William Clerk offered OCRA subscriber access to CNS, and noted that she uses her

"discretion to provide -- to offer to provide [OCRA] to [non-Virginia-licensed attorneys] who need access to the information in the interest of being transparent and providing the highest possible service." Following several requests, the Prince William Clerk offered CNS OCRA subscriber access in June 2021, but at an annual subscription cost that is six times the amount charged to Virginia-licensed attorneys. The access offered to CNS also imposed certain dissemination and publication prohibitions on the filings, which are already nonconfidential and public in nature.

4. The First Amendment to the United States Constitution provides the press and public with a presumptive right of access to certain civil, nonconfidential, public court filings. Granting preferential access to these records to one segment of the public, while effectively denying it to others, violates principles of the First Amendment and Equal Protection unless some legitimate state interest exists for such discrimination. And when a fundamental right is involved, such as the First Amendment right of access, the state interest must be a compelling one and the denial of access must be narrowly tailored to meet those interests.

5. In light of this, CNS asks this Court to enjoin Defendants, in their official capacities – as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control – from continuing their policies, practices, and customs that deny equal treatment of the press and public and instead provide preferential treatment to Virginia-licensed attorneys for OCRA subscriber access. Further, should this Court determine that Va. Code § 17-1.293 is a legitimate basis for Defendants to restrict such access, CNS requests this Court to enter a declaratory judgment that Va. Code § 17.1-293 is unconstitutional on its face, or, in the alternative, unconstitutional as applied by Defendants' policies, practices, and customs.

3

## JURISDICTION AND VENUE

6. CNS' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief).

7. Defendants are subject to personal jurisdiction in this District because they reside and/or conduct business within this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Executive Secretary's primary place of business is within the Richmond Division of this District and because a substantial part of the events or omissions giving rise to CNS' claims occurred in this District.

9. Divisional venue is proper in the Richmond Division under E.D. Va. Local Civil Rule 3(C) because the Executive Secretary resides in the Richmond Division, and Defendants are all residents of Virginia. In addition, divisional venue is proper in the Richmond Division because a substantial part of the events or omissions giving rise to CNS' claims occurred in the Richmond Division.

## PARTIES

10. CNS is a California corporation with its principal place of business located in Pasadena, California. A widely read legal news service with thousands of subscribers across the nation, CNS specializes in news reporting about civil litigation, from the date of filing through the appellate level, in state and federal courts throughout the United States. CNS' comprehensive and timely coverage of civil litigation through its print, website, and e-mail publications has made it a go-to source of information about the nation's civil courts.

11. Defendant Karl R. Hade is the Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia, and is sued in his official capacity. The Executive Secretary serves as "the administrator of the circuit court system, which includes the operation and maintenance of a case management system." Va. Code. § 17.1-502(A). OES creates, operates, and maintains several programs and systems for the Virginia Circuit Court clerks, one of which is OCRA.

12. Acting in his official capacity, the Executive Secretary, as well as those acting at his direction and under his supervision, are directly involved with and/or responsible for acts giving rise to the preferential and discriminatory internet access to civil, nonconfidential, public court filings provided to Virginia-licensed attorneys through OCRA, but which the public and press do not share.

13. Defendant Jacqueline C. Smith is the Clerk of the Circuit Court for Prince William County, Virginia, and is sued in her official capacity. The Prince William Clerk is the custodian of and responsible for, among other things, the administration of court records and ensuring that those records are maintained and made available to the public for inspection and examination.

14. Acting in her official capacity, the Prince William Clerk, as well as those acting at her direction and under her supervision, are directly involved with and/or responsible for acts giving rise to the preferential and discriminatory internet access to civil, nonconfidential, public court filings that are filed in the Circuit Court for Prince William County, Virginia that is provided to Virginia-licensed attorneys through OCRA, but which is not provided to the press and public.

15. Defendants' actions reflect Defendants' official policies, practices, and customs. Defendants' actions, as alleged in this Complaint, are under the color of Virginia law and constitute

state action within the meaning of the Fourteenth Amendment to the Unites States Constitution and 42 U.S.C. § 1983.

16. CNS seeks relief against Defendants, as well as against their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTUAL ALLEGATIONS

A. **CNS' Publications and Subscribers**

17. CNS is a nationwide news service founded almost 30 years ago out of a belief that great swaths of news about civil litigation went unreported because the traditional news media failed to cover much of the important business of the courts. CNS employs more than 240 people, most of them editors and reporters, covering approximately 3,000 state and federal trial and appellate courts in all 50 states in the United States. CNS currently employs four reporters who cover the state and federal trial and appellate courts of Virginia, and who are supervised by CNS' Southeast regional bureau chief. CNS' four Virginia reporters are based in the larger metropolitan areas – Alexandria, Prince William, Norfolk, and Richmond.

18. CNS offers its readers a variety of publications. Its New Litigation Reports contain original, staff-written summaries of significant new civil complaints. These reports are sent to subscribers via e-mail each evening. CNS publishes two New Litigation Reports in Virginia – the *Virginia Report* and the *Southern Virginia State Report*. These New Litigation Reports do not cover criminal, domestic relations, or probate matters.

19. In addition, CNS publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by hundreds of thousands of people each month. The website functions much like a daily print newspaper, featuring staff-written articles

from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

20. CNS has been credited as the original source of reporting on various topics by a wide range of publications, including the *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, the YouTube news channel, and others. In addition, U.S., Canadian, and New Zealand radio shows have interviewed CNS reporters.

21. CNS has more than 2,300 subscribers nationwide. A substantial set of news and entertainment outlets are CNS subscribers, including but not limited to *The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, *The Dallas Morning News*, *Detroit Free Press*, Fox Entertainment Group, *Houston Chronicle*, *Los Angeles Times*, North Jersey Media Group, *The Salt Lake Tribune*, *San Antonio Express News*, *San Jose Mercury News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Warner Bros., and many broadcast stations. The Washington, DC-based Center for Public Integrity is also a CNS subscriber.

22. Among academic institutions, subscribers to CNS' New Litigation Reports include Boston College Law School, Boston University, Case Western Reserve University, Harvard Law

School, Loyola Law School, MIT Sloan School of Management, Southern Illinois University School of Law, UC Hastings College of Law, and UCLA School of Law.

23.     Nearly all of the nation's large and mid-sized law firms also subscribe to one or more of CNS' publications.  Non-law firm business entities, including large publicly-traded companies, government entities, and non-profit organizations, also subscribe to CNS' publications.

24.     To prepare the New Litigation Reports and identify new cases that may warrant a website article, CNS reporters have traditionally visited their assigned courts on a daily or weekly basis to review all the complaints filed that day (or since their last visit) to determine which ones are newsworthy.  However, as the vast majority of federal courts and an increasing number of state courts are putting court records online via court web sites, CNS also covers courts remotely through the internet.

**B.     Relevant Virginia Law**

25.     Virginia law provides that the Virginia Circuit Court clerks "shall have custody of and shall keep all court records, including books, evidence, records, maps, and papers, deposited in their offices or at such location otherwise designated by the clerk, as well as records stored in electronic format whether the storage media for such electronic records are on premises or elsewhere." Va. Code § 17.1-242

26.     Virginia law permits remote access to nonconfidential court records through each Virginia Circuit Court clerk.  *See* Va. Code § 17.1-225; *see also* State Officials and Employees-Costs, Fees, Salaries, Allowances, Courts of Record, 1998 Va. Laws Ch. 872 (H.B. 1114).

27.     In relevant part, Va. Code § 17.1-293(B) requires that

[N]o court clerk shall post on the Internet any document that contains the following information: (i) an actual signature, (ii) a social security number, (iii) a date of birth

identified with a particular person, (iv) the maiden name of a person's parent so as to be identified with a particular person, (v) any financial account number or numbers, or (vi) the name and age of any minor child.

28. This prohibition is not applicable when a Virginia Circuit Court clerk is, among other things, "[p]roviding secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk." Va. Code § 17.1-293(E)(7).

**C.      OCRA's Preference-Based Access to Online Court Records**

29. At the present time, the Executive Secretary administers OCRA for over ninety Virginia Circuit Court clerks. Through the Executive Secretary's administration and operation of OCRA, the Virginia Circuit Court clerks, including the Prince William Clerk, provide preferential access to Virginia-licensed attorneys to the detriment of CNS, other members of the press, and the general public.

30. After paying a nominal subscriber's fee and registering for OCRA, Virginia attorneys have the ability to view all civil, nonconfidential, public court filings remotely over the internet – on any day of the week, at any time of day, and from any location in the world. OCRA access also gives Virginia attorneys the ability to download, save, and print out the filings at no additional charge.

31. CNS is willing to pay a similar subscriber's fee for OCRA access. However, according to the clerks of various Virginia Circuit Courts, including the Prince William Clerk (which charges Virginia-licensed attorneys $200 annually), non-Virginia-licensed attorneys cannot register for the same OCRA subscriber access as Virginia-licensed attorneys, and thus are not permitted to have the same remote access to court records as those attorneys enjoy.

9

32. None of CNS' reporters covering Virginia or CNS' Southeast Bureau Chief are attorneys, nor are any of CNS' reporters or CNS' Southeast Bureau Chief licensed to practice law in Virginia.

**D.     CNS' Good Faith Attempts to Obtain OCRA Access & to Resolve Short of Litigation**

33. For many years, CNS has made repeated attempts to obtain OCRA subscriber access and also to resolve this issue with the Executive Secretary, the Prince William Clerk, and various other Virginia Circuit Court clerks.

34. In 2016, CNS requested OCRA access from almost fifty Virginia Circuit Court clerks. Of the Virginia Circuit Court clerks who did respond, they either denied OCRA subscriber access outright or offered CNS OCRA subscriber access if the CNS subscriber was a Virginia-licensed attorney, sometimes citing to Va. Code § 17.1-293.

35. During a deposition in January 2019 in the matter of *Courthouse News Service v. Schaefer*, Case No. 2:18-cv-391 (E.D. Va. Norfolk Division), the Prince William Clerk testified that she has, "on occasion … used [her] discretion to provide -- to offer to provide [OCRA] to others who need access to the information in the interest of being transparent and providing the highest service possible." To that end, the Prince William Clerk also testified that the offer applied to CNS and she was "still willing to provide it."

36. Since that time, CNS and its counsel have attempted to work with the Prince William Clerk and her counsel to obtain OCRA subscriber access. Indeed, the Prince William Clerk offered OCRA subscriber access to CNS; however, the Prince William Clerk denied CNS such access because the CNS applicant did not include a Virginia bar license number and a copy of a Virginia bar card – ostensibly due to the fact that the CNS applicant is not a Virginia-licensed attorney. A copy of the letter from the Prince William Clerk is attached hereto as **Exhibit 1**.

37. When CNS, through its counsel, inquired as to the denial of access, the Prince William Clerk responded by email stating that she does not "currently have an OCRA contract for non-attorneys. I will work on pulling one together now so we can complete same for Mr. Abbott and offer it to any other non-attorney parties who may wish to sign up for access." A copy of the May 25, 2021 email from the Prince William Clerk is attached hereto **Exhibit 2**.

38. Thereafter, the Prince William Clerk provided CNS, through its counsel, a Non-Attorney OCRA subscriber agreement, which charged an annual subscription fee of $1,200 and imposed a variety of prohibitions on dissemination and publication of the nonconfidential, civil public court filings. A copy of the Non-Attorney OCRA subscriber agreement is attached hereto as **Exhibit 3**.

39. CNS also requested access from OES. In March 2021, CNS, through its counsel, wrote to the Executive Secretary and also OES' Director of Judicial Information Technology raising the issues addressed in this Complaint. CNS extended an invitation to the Executive Secretary to have a conversation regarding OCRA subscriber access. A copy of the letter is attached hereto as **Exhibit 4**.

40. CNS, through its counsel, followed up again in April 2021 via email and noted its willingness to engage in discussions so as to avoid litigation. The Executive Secretary, through the Assistant Executive Secretary and Counsel, responded by stating that the Executive Secretary is "not in a position to provide" CNS with OCRA access because "the contents and records that are viewable [on OCRA] are under the custody and control of the circuit court clerks."

E. **Harms Caused By Discriminatory Access**

41. While a Virginia Circuit Court clerk need not make its documents available for remote or online viewing, once a clerk does so (or allows someone else to do so), it becomes

incumbent on the clerk to offer that same access to all members of the public and press. Such even-handed access to court records is not merely a presumed right or good policy; it is a right conferred by the United States Constitution. Among the records at issue here are records for which courts have found a First Amendment right of access to apply, such as civil complaints, summary judgment filings, and orders on summary judgment motions. *See Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532 (E.D. Va. 2020) (holding that the First Amendment provides a contemporaneous right of access to newly filed civil complaints), *aff'd*, --- F.4th ---, 2021 WL 2583389, *6 (4th Cir. June 24, 2021) ("The press and public thus have an important interest in reasonably contemporaneous access to civil complaints"); *see also Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) ("As we held in *Planet I*, and as the district court correctly concluded, a qualified First Amendment right of access extends to timely access to newly filed civil complaints."); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (same); *Doe v. Public Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) (First Amendment right of access to judicial opinion rulings on summary judgment and docket sheets); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252-53 (4th Cir. 1988) (First Amendment right of access to papers filed in connection with a summary judgment motion).

42. There is no difference in the content of the civil, nonconfidential, public court filings that CNS and other members of the press must travel to each individual court to see, and the civil records that Virginia-licensed attorneys can see remotely over the internet via OCRA – i.e., they are the exact same records. And yet, while Virginia-licensed attorneys can view these records any time of the day or night, without moving from their office or home chairs, and can print out copies of records without paying per-page copying fees, CNS must go through the time and expense of traveling to each Virginia Circuit Court clerk's office to review the documents in

person. Even for occasional visits, this is not an insignificant expense or burden, especially if the Virginia Circuit Court is some distance away.

43. Indeed, to have anything near the access that a Virginia-licensed attorney has through OCRA, a news organization (such as CNS, which focuses its reporting on court records) would need to send a reporter to all of the Virginia Circuit Court clerk's offices that use OCRA every day.

44. In addition, non-attorneys – including CNS, other members of the press, and the general public – must pay a per page charge for any copies that they request, a cost that can add up quickly and that is not incurred by the Virginia-licensed attorneys with OCRA subscriber access.

45. Moreover, the Prince William Clerk charges non-attorneys $1,200 annually for an OCRA subscription, whereas Virginia-licensed attorneys are charged only $200 annually.

46. Finally, non-attorneys, while effectively being denied access to OCRA, can only review civil, nonconfidential, public court filings while the Virginia Circuit Court clerks' offices are open to the public. Practically speaking, this means that there is an inherent delay in access to nonconfidential, public court filings for non-attorneys, whereas there is no such delay for Virginia-licensed attorneys.

47. In the case of CNS, a news service specializing in reporting on civil litigation, Defendants' refusal to provide it with the same access to civil court records that Defendants are currently providing to Virginia-licensed attorneys means that, as a practical matter, CNS can only report on a select number of Virginia Circuit Courts on a daily basis, others on a less periodic basis, and some not at all.

48. If non-attorneys – including CNS, other members of the press, as well as the general public – were provided the same access to civil, nonconfidential, public court filings that Defendants are currently providing to Virginia-licensed attorneys, the media (including CNS) would be able to provide more comprehensive news coverage about new civil actions in all or most of Virginia's Circuit Courts.

## COUNT ONE
### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983
### First Amendment
### (Against Both Defendants)

49. CNS incorporates and repeats the allegations of Paragraphs 1 – 48 herein.

50. Defendants' actions under color of state law, including without limitation, their policies, practices, and customs of providing OCRA access to Virginia-licensed attorneys, including in cases in which they are not attorneys of record, but depriving that same access to others, including CNS, deprives CNS, and by extension its subscribers and the public, of the First Amendment right of equal access to certain civil, nonconfidential, public court filings and other public court records, as required by the First Amendment to the U.S. Constitution.

51. The policy, practice, and custom of providing remote online access to civil complaints and other public court records to Virginia-licensed attorneys, including in cases in which they are not attorneys of record, but depriving that same access to others, including CNS, impermissibly discriminates against CNS and other members of the press, and the classification burdens the fundamental First Amendment rights of CNS, its subscribers, and other readers of its news reports.

52. There is no compelling or overriding interest sufficient to justify Defendants' actions resulting in the denial of contemporaneous and equal access to new civil complaints and other public court records under the First Amendment. Even if an overriding or compelling interest

did exist, there are far less restrictive means of protecting any such interest. As such, Defendants' policies and practices are not narrowly tailored, as required by law.

53. CNS has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violations of CNS' First Amendment rights. CNS is therefore entitled to declaratory and injunctive relief to prevent further deprivation of these rights.

## COUNT TWO
### Violation of U.S. Const. Amend. XIV and 42 U.S.C. § 1983
### Equal Protection
### (Against Both Defendants)

54. CNS incorporates and repeats the allegations of Paragraphs 1 – 53 herein.

55. Defendants' actions under color of state law, including without limitation, their policies, practices, and customs of providing OCRA access to Virginia-licensed attorneys, including in cases in which they are not attorneys of record, but depriving that same access to others, including CNS, deprives CNS, and by extension its subscribers and the public, of their Fourteenth Amendment right of equal protection of the laws.

56. The policy, practice, and custom of providing remote online access to civil, nonconfidential, public court filings and other public court records to Virginia-licensed attorneys, including in cases in which those Virginia-licensed attorneys are not attorneys of record, but depriving that same access to others, including CNS, impermissibly discriminates against CNS and other members of the press, and the classification burdens the fundamental First Amendment rights of CNS, its subscribers, and other readers of its news reports.

57. There is no legitimate, compelling, or other justification for implementing a system of discriminatory access to civil, nonconfidential, public court filings and other public court

records, and, even if there were, Defendants' practices and policies are not narrowly tailored, as is required by law.

58. CNS has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violations of CNS' First and Fourteenth Amendment rights. CNS is therefore entitled to declaratory and injunctive relief to prevent further deprivation of these rights.

### COUNT THREE (IN THE ALTERNATIVE)
### Violation of U.S. Const. Amend. XIV and 42 U.S.C. § 1983
### Facial Challenge to Va. Code § 17.1-293
### (Against Both Defendants)

59. CNS incorporates and repeats the allegations of Paragraphs 1 - 58 herein.

60. Virginia Code § 17.1-293, on its face, and as implemented by Defendants through their policies, practices, and customs of denying access to OCRA to those who are not Virginia-licensed attorneys, including CNS, deprives CNS, and by extension its subscribers and the public, of their Fourteenth Amendment right to equal protection of the laws.

61. The policy, practice, and custom of providing remote online access to civil, nonconfidential, public court filings and other public court records to Virginia-licensed attorneys, including in cases in which they are not attorneys of record, but depriving that same access to others, including CNS, impermissibly discriminates against CNS and other members of the press, and the classification burdens the fundamental First Amendment rights of CNS, its subscribers, and other readers of its news reports.

62. There is no legitimate, compelling, or other justification for implementing a system of discriminatory access to court records, and, even if there were, the practices and policies are not narrowly tailored, as is required by law.

16

63. CNS has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violations of CNS' First and Fourteenth Amendment rights. CNS is therefore entitled to declaratory and injunctive relief to prevent further deprivation of these rights.

**COUNT FOUR (IN THE ALTERNATIVE)**
**Violation of U.S. Const. Amend. XIV and 42 U.S.C. § 1983**
**As-Applied Challenge to Va. Code § 17.1-293**
**(Against Both Defendants)**

64. CNS incorporates and repeats the allegations of Paragraphs 1 - 63 herein.

65. Virginia Code § 17.1-293, as applied by Defendants, through their policies, practices, and customs of denying access to OCRA to those who are not Virginia-licensed attorneys, including CNS, deprives CNS, and by extension its subscribers and the public, of their Fourteenth Amendment right to equal protection of the laws.

66. Defendants' policies, practices, and customs of providing remote online access to civil, nonconfidential, public court filings and other public court records to Virginia-licensed attorneys, including in cases in which they are not attorneys of record, but depriving that same access to others, including CNS, impermissibly discriminate against CNS and other members of the press, and the classification burdens the fundamental First Amendment rights of CNS, its subscribers, and other readers of its news reports.

67. There is no legitimate, compelling, or other justification for implementing a system of discriminatory access to civil, nonconfidential, public court filings and other public court records, and, even if there were, the practices and policies are not narrowly tailored, as is required by law.

68. CNS will suffer irreparable harm as a result of Defendants' violations of CNS' First and Fourteenth Amendment rights. CNS is therefore entitled to declaratory and injunctive relief to prevent further deprivation of these rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Courthouse News Service seeks judgment in its favor and against Defendants Karl R. Hade, in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia, and Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia as follows:

1. Injunctions against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies, practices, and customs of denying remote online access to non-Virginia-licensed attorneys;

2. To the extent that this Court determines that Va. Code § 17.1-293 restricts such access, CNS seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Va. Code § 17.1-293 unconstitutional on its face because it impermissibly denies remote online access to non-attorneys, including CNS, because it denies non-Virginia-licensed attorneys, including CNS, of equal access and equal protection under the law in violation of the First and Fourteenth Amendments to the U.S. Constitution, and because it impermissibly discriminates against CNS and other members of the press and public, and the classification burdens the fundamental First Amendment rights of CNS, its subscribers, and other readers of its news reports;

3. In the alternative (and also to the extent that this Court determines that Va. Code § 17.1-293 restricts such access), CNS seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Va. Code § 17.1-293 unconstitutional as-applied by Defendants under the Fourteenth

Amendment to the U.S. Constitution, for the reason that Defendants' policies, practices, and customs deprive non-attorneys, including CNS, of equal protection under the law in that those policies, practices, and customs impermissibly discriminate against CNS and other members of the press, and the classification burdens the fundamental First Amendment rights of CNS, its subscribers, and other readers of its news reports;

4. For an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. For all other relief the Court deems just and proper.


Dated: July 15, 2021

Respectfully Submitted,

*/s/ Adam L. Shaw*
Adam L. Shaw (Va. Bar No. 89559)
Heather S. Goldman (*pro hac vice* forthcoming)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Fax: (202) 508-6200
Email: adam.shaw@bclplaw.com
  heather.goldman@bclplaw.com

*Attorneys for Plaintiff*
*Courthouse News Service*