UNITED STATES DISTRICT COURT
For the Eastern District of Virginia
Richmond Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICES | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 3:21-cv-00460-HEH |
| | ) |
| KARL R. HADE, in his official capacity as | ) |
| Exec. Sec'y of the Office of Exec. Sec'y of the | ) |
| Supreme Ct. of Va., *et al.* | ) |
| | ) |
| *Defendants.* | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KARL R. HADE'S RULE 12(b)(6) MOTION TO DISMISS

The Defendant, Karl R. Hade ("Defendant Hade" or the "Executive Secretary"), by counsel, hereby submits this memorandum of law in support of his Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. Plaintiff Courthouse News Services ("CNS or Plaintiff") has failed to state any actions attributable to the Executive Secretary rendering him subject to suit under 42 U.S.C. § 1983. Thus, Defendant Hade is not a proper party to this action. Further, CNS fails to plead that it has suffered an injury to a right protected by the First Amendment, because although the First Amendment includes a right to access court records, it does not mandate remote internet access to avoid the inconvenience of a trip to the courthouse.  Finally, Virginia Code § 17.1-293 is facially valid because it does not violate the Equal Protection Clause of the Fourteenth Amendment. Although it does treat attorneys, their agents, and certain employees of government agencies differently than members of the general public, that difference in treatment is to further a legitimate state interest in protecting court records from the ease of exploitation that a limitless internet database would provide. Nor was Virginia Code § 17.1-293 unconstitutionally applied to CNS, because CNS did receive the preferential access

1

typically reserved to officers of the court. CNS has simply failed to allege how the access it received to the OCRA database violated its rights to equal treatment. Therefore, this case should be dismissed as a whole for failure to state a claim. If any part of it survives, however, Defendant Hade should be dismissed as a party.

**FACTUAL AND PROCEDURAL BACKGROUND**

CNS is a national media entity reporting on civil litigation in state and federal courts. Dkt. No. 1 ¶ 17. CNS states that it covers civil litigation in approximately 3,000 state and federal courts across the United States. *Id.* CNS publishes news regarding civil litigation in Virginia state and federal courts via e-mail to subscribers, in addition to news generally published on is website, www.courthousenews.com. Dkt. No. 1 ¶¶ 18-19.

To cover the state and federal trial and appellate courts of Virginia, CNS employs four reporters based in Alexandria, Prince William, Norfolk, and Richmond. *Id.* at ¶ 17. To identify which cases may be newsworthy, these reporters "have traditionally visited their assigned courts on a daily or weekly basis to review all the complaints filed that day (or since their last visit) to determine which ones are newsworthy." *Id.* at ¶ 24. In addition to this practice, "CNS also covers courts remotely through the internet." *Id.* CNS fails to identify the means by which it currently employs its remote monitoring practices.

CNS, looking to reduce costs associated with courthouse visits, now brings this Complaint seeking to access Officer of the Court Remote Access ("OCRA") offered by many, but not all, Virginia Circuit Court Clerks. Dkt. No. 1 ¶ 1. OCRA is available through a technology platform developed by the Executive Secretary's Office of the Supreme Court of Virginia, for use by circuit court clerks who elect to provide access to circuit court records through an Internet portal. In OCRA, images of nonconfidential records within civil case files in

the circuit courts may be viewed by subscribers authorized by the appropriate Circuit Court Clerk. Subscribers are limited to viewing images for only the circuit courts to which they have a paid subscription. In order to access the records of all the circuit court clerks who offer OCRA, subscribers must enter into a subscriber agreement with each of the circuit court clerks' offices. Subscribers are limited by statute to attorneys, attorneys' agents, *pro hac vice* attorneys, and government agencies as authorized by the clerk. Va. Code § 17.1-293(E)(7).

CNS names Karl R. Hade, the Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia ("the Executive Secretary"), in his official capacity, as a defendant to this suit because he serves as "the administrator of the circuit court system, which includes the operation and maintenance of a case management system." Va. Code § 17.1-502(A); Dkt. No. 1 ¶ 11. CNS asserts that Executive Secretary, along with his agents, "are directly involved with and/or responsible for acts giving rise to the preferential and discriminatory internet access to . . . public court filings provided to Virginia-licensed attorneys through OCRA." Dkt. No. 1 ¶ 12. CNS does not identify these actions whatsoever.

CNS alleges that it requested access to OCRA from the Office of the Executive Secretary in March and April 2021. Dkt. No. 1 ¶¶ 39-40; Exhibit 4.[1] The Executive Secretary, through the Assistant Executive Secretary and Counsel, responded stating that its office had no authority to grant access to records which were properly under the custody and control of a Circuit Court clerk. Dkt. No. 1 ¶ 40.

CNS agrees that under Virginia law, Circuit Court clerks "have custody of and shall keep all court records . . . as well as records stored in electronic format whether the storage media for such electronic records are on premises or elsewhere." Va. Code § 17.1-242; Dkt. No. 1 ¶ 25.

---

[1] Numerical exhibit citations refer to those attached to Plaintiff CNS's Complaint.

CNS additionally agrees that Virginia law "permits remote access to nonconfidential court records through each Virginia Circuit Court clerk." Dkt. No. 1 ¶ 26; Va. Code § 17.1-255. Accordingly, CNS names the Honorable Jacqueline C. Smith, Clerk of the Circuit Court for Prince William County ("Clerk Smith"), in her official capacity, as a defendant to this suit. Dkt. No. 1 ¶ 13.

CNS's dispute with Virginia Circuit Court clerks over OCRA access began in 2016. Dkt. No. 1 ¶ 34. They allege that they requested OCRA access "from almost fifty Virginia Circuit Court Clerks." *Id.* CNS was summarily denied access by circuit court clerks on the basis that CNS did not identify itself as an officer of the courts, or it was ignored. *Id.* CNS alleges, however, that Clerk Smith has "on occasion" provided OCRA access to non-officers of the court "who need access to the information in the interest of being transparent and providing the highest service possible." Dkt. No. 1 ¶ 35. Utilizing her discretion, Clerk Smith drafted her own "Non-Attorney OCRA subscriber agreement" and tendered it to CNS. Exhibit 3. The agreement charged an annual subscription fee of $1,200 and "imposed a variety of prohibitions on dissemination and publication of the nonconfidential, civil public court filings." Dkt. No. 1 ¶ 36.

CNS now brings this Complaint against both the Executive Secretary and Clerk Smith, seeking declaratory and injunctive relief under § 1983 as to each defendant, attempting to gain access to OCRA from either or both.

**LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem. Hosp.*, 572

4

F.3d 176, 180 (4th Cir. 2009). But the complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory statements and facts "merely consistent with a defendant's liability" do not suffice to carry a complaint over 'the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Phillips*, 572 F.3d at 180 (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)).

## ARGUMENT

**I.     Counts One and Two fail because CNS cannot identify any "policies, practices, and customs" attributable to the Executive Secretary which limit CNS's access to OCRA.**

Plaintiff's Complaint makes few factual allegations as to the Executive Secretary. CNS correctly alleges that the Executive Secretary serves as "the administrator of the circuit court system, which includes the operation and maintenance of a case management system." Comp. ¶ 11, citing Va. Code § 17.1-502(A). "OES creates, operates and maintains several programs and systems for the Virginia Circuit Court clerks, one of which is OCRA." *Id.* Plaintiff then states that in response to their request for OCRA access, the Executive Secretary stated he was "not in a position to provide" CNS with OCRA access because "the contents and records that are viewable [on OCRA] are under the custody and control of the circuit court clerks." Dkt. No. 1. ¶¶ 39-40.

Plaintiff alleges no other facts attributable to the Office of the Executive Secretary ("OES"). Implicitly, Plaintiff asks this Court to take the above facts and make two speculative leaps as to the Executive Secretary's actions. First, that because OES maintains OCRA, then OES must have the authority to grant individuals and entities access to OCRA. But Plaintiff provides no facts or authority to support this proposition. Second, for the purposes of Count Two, Plaintiff suggests that OES grants or has granted Virginia bar-licensed attorneys' access to OCRA, while refusing it to non-attorneys, thus violating CNS's rights under the Equal Protection Clause. Plaintiff provides no factual basis to support this suggestion.

To survive a Rule 12(b)(6) Motion to Dismiss, a plaintiff must plead sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). With regards to the Executive Secretary, CNS has failed to do so. Plaintiff fails to provide any foundation for the conclusion that OES is "directly involved with and/or responsible for acts giving rise to the preferential and discriminatory n access to civil . . . court filings provided to Virginia-licensed attorneys through OCRA." Dkt. No. 1. ¶ 12. Accordingly, dismissal of Counts I and II are appropriate.

**II.    Counts I, III, and IV fail because CNS does not identify a right protected under the First Amendment.**

The gravamen of CNS's First Amendment claims is that there exists a "First Amendment right of equal access to certain civil, nonconfidential, public court filings and other public court records." Dkt. No. 1. ¶ 50. CNS alleges that "[w]hile a Virginia Circuit Court clerk need not make its documents available for remote or online viewing, once a clerk does so (or allows someone else to do so), it becomes incumbent on the clerk to offer that same access to all members of the public and press." Dkt. No. 1. ¶ 41. This right of "equal remote access" is not recognized in any court in the United States.

In an attempt to define a proposed equal right of remote access, CNS offers several cases showing a qualified First Amendment right to contemporaneous physical access to civil complaints, a right of physical access to summary judgment filings, and a right of physical access to orders on summary judgment motions. Dkt. No. 1. ¶ 41. These cases are inapposite to the question of whether a right of "equal remote access" exists under the First Amendment. CNS has not alleged that either Clerk Smith or OES has denied their timely access to any filings in Prince William County Circuit Court, nor that Clerk Smith has denied their access to OCRA; instead, their Complaint suggests that the First Amendment requires total equality of remote access, in terms of fees, usage, and dissemination prohibitions, to all public court filings to all persons. *See* Dkt. No. 1. ¶¶ 41-48. CNS's qualified First Amendment right of physical access to court filings has no bearing on this proposition.

There is no question that the First Amendment includes an implicit right for both the press and public to enjoy a qualified right of access to judicial documents and records filed in civil and criminal proceedings. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 434, 428 (4th Cir. 2005). The Supreme Court found this right was inherent in the right to free speech, because the free flow of information regarding government actions, such as in court proceedings, is fundamental to a robust right of free speech and the right to freedom of the press. *Richmond Newspapers, Inc.,* 448 U.S. at 580 (citing *Branzburg v. Hayes,* 408 U.S. 665, 681 (1972)).

But the question CNS poses to this Court is whether there exists a "First Amendment right of equal access" to public court filings via the internet rather than requiring in person travel to the courthouse to view the records. Dkt. No. 1 ¶ 50. Although CNS would be hard-pressed to argue that the Constitution requires internet access to court records, CNS has had to frame their argument

that the First Amendment requires internet access to court records if any subset of people has that kind of access. Because the question is framed as one of equal application of the law to officers of the court and the general public or members of the press, rather than a question about delayed access, or a total denial of access to certain records, CNS's claim implicates the Equal Protection Clause of the Fourteenth Amendment, rather than the First Amendment. Accordingly, CNS has failed to state a claim to a violation of any right guaranteed by the First Amendment and Count One should be dismissed with prejudice. Counts Three and Four should be dismissed with prejudice to the degree CNS attempts to premise the Counts on violations of their First Amendment rights.

### III. Va. Code § 17.1-293 is facially constitutional.

In Count Three, CNS claims that Virginia Code § 17.1-293 is unconstitutional on its face because it violates the Equal Protection Clause of the Fourteenth Amendment. To succeed in a facial attack, CNS's Complaint must establish "that no set of circumstances exists under which [Va. Code § 17.1-293] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), or that the statute lacks any "plainly legitimate sweep," *Washington v. Glucksberg*, 521 U.S. 703, 740, n.7 (1997) (Stevens, J., concurring in judgments) (internal quotation marks omitted). [2]

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

---

[2] Generally, the Supreme Court has noted that facial challenges should be used sparingly and only in exceptional circumstances. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-30 (2006) (discussing the preference for as-applied challenges); David L. Franklin, *Facial Challenges, Legislative Purpose and the Commerce Clause*, 92 IOWA L. REV. 41, 55-56 (2006) ("The Court has explained that the act of striking down a statute on its face stands in tension with several traditional components of the federal judicial role, including a preference for resolving concrete disputes rather than abstract or speculative questions; a deference to legislative judgments; and a reluctance to resort to the 'strong medicine' of constitutional invalidation unless absolutely necessary.")

amend. XIV, § 1. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated *and* that the unequal treatment was the result of discriminatory animus." *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91 (4th Cir. 2011) (emphasis added).

As a general principle of Equal Protection Clause jurisprudence, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *United States v. Timms*, 664 F.3d 436, 445 (4th Cir. 2012) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). "However, high levels of scrutiny will be applied if a statute implicates a fundamental right or suspect class." Because CNS fails to identify fundamental right at stake or itself as a member of a protected class, Va. Code § 17.1-293's constitutionality must be assessed with a rational basis review.

Defendant Hade concedes that Virginia law treats officers of the court differently from members of the general public, including the press, who are not officers of the court. Therefore, CNS has met the first prong of an Equal Protection claim. It fails, however, to meet the second prong.

To satisfy the second element of an equal protection claim, a plaintiff is required to allege facts sufficient to show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Sigma Lambda Upsilon/Señoritas Latinas Unidas Sorority, Inc. v. Rector & Visitors of the Univ. of Va.*, 503 F. Supp. 3d 433, 447 (W.D.Va. 2020) (quotation omitted). In this context, "discriminatory intent 'implies more than intent as volition or intent as awareness of consequences." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 819 n.2 (4th Cir. 1995) (quotation omitted). Instead, the plaintiff must show that the defendants "selected or reaffirmed a particular course of action at least in part

because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (internal quotation marks and citation omitted). As courts have recognized, this is "no simple task." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 511 (8th Cir. 2015).

CNS fails the second element of its equal protection claim because it fails to identify itself as a member of a protected class which might trigger heightened scrutiny. CNS argues that Virginia Code § 17.1-293 discriminates between attorneys and non-attorneys. "Non-attorneys" are not a protected class within Equal Protection Clause jurisprudence.

Under a rational basis review, the legislature, in creating categories of treatment, "need not actually articulate at any time the purpose or rationale supporting its classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993). "Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quotation marks and citation omitted). "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320-21 (quotation marks and citation omitted). Moreover, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321 (quotation marks and citation omitted).

Virginia Code § 17.1-293 reflects the Commonwealth of Virginia's legitimate state interest in the protection of private, highly sensitive information from widespread public dissemination, balanced with attorneys' need to use such information. This private information includes social security numbers, driver's license identification numbers, or information from credit cards, debit cards, bank accounts, or other electronic billing and payment systems. Va. Code § 17.1-293(A).

Nor may a court clerk post on the internet any document which contains an actual signature, a social security number, a date of birth identified with a particular person, the maiden name of a person's parent so as to be identified with a particular person, any financial account number or numbers, or the name and age of any minor child. Code § 17.1-293(B). Should this highly sensitive information be exposed to the public eye, it could be hacked, or harvested by large organizations for improper or illicit purposes. Public confidence in the judicial system would be sapped.

Publishing this information for attorneys' (and other court personnel) eyes only does not run a similar risk of abuse. Virginia-licensed attorneys are subject to the Virginia Rules of Professional Conduct (the "RPC"). Accordingly, unlike a member of the public, should an attorney utilize his client's private information, or a third party's information, for improper or illicit purposes, he risks censure and disbarment.[3] And generally, a lawyer has a responsibility to uphold trust and confidence in the legal system at large. "A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious . . . a lawyer can be sure that preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private." Preamble to the Va. Rules of Prof'l Conduct.

CNS argues that it can obtain much of this information by accessing the court records in person, at the courthouse. But the very gravamen of CNS's complaint is that in-person access is burdensome, costly, and time consuming. It is difficult to obtain vast amounts of information from

---

[3] *See* Va. Rules of Prof'l Conduct R. 4.4, cmt. 1 (2009) ("Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship.").

11

every circuit court in Virginia. Non-digital records may also be more difficult to quickly process and review. But this burden is its own protection from abuse. Interested parties can still obtain the information, but it is difficult to quickly harvest a mass of personal identifying information from litigants, unlike records kept in an online database, which is more vulnerable to data "scraping." *See, e.g.,* Court Data API, available online at https://unicourt.com/lp/features/api/court-data (last visited August 9, 2021) (advertising the ability to monitor cases available through online court records databases, such as PACER, and manipulate those records to provide "real time alerts" and "get bulk access" to "court data.")

Va. Code § 17.1-293 is constitutional as it balances attorneys' and court staff's need for efficient access to the records of the cases they are managing with the Commonwealth of Virginia's interests in protecting private information from easy harvesting by companies with no legitimate interest in the proceedings. Because "non-attorneys" are not a protected class under Equal Protection Clause jurisprudence, this Court should presume Va. Code § 17.1-293 valid because Virginia's statutory scheme passes a rational basis review.

**IV.     CNS fails to identify how Va. Code § 17.1-293 is unconstitutional as-applied.**

CNS alleges that Va. Code § 17.1-293 is unconstitutional as-applied to CNS. In the Complaint, however, CNS names only two defendants: Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia, who has no authority to grant or deny access to any particular circuit court's OCRA database and Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, who exercised her discretion to offer CNS access to Prince William County Circuit Court's OCRA database.

12

As the administrator of OCRA, OES has an interest in defending the constitutionality of Virginia's statutory scheme regulating who has access to OCRA, as discussed *supra* in Section III. OES and Defendant Hade do not, however, have a legal interest in how individual circuit court clerks exercise their discretion to provide access to the OCRA records for their particular circuit court. As discussed above, internet access to a database of court records is vulnerable to specific kinds of exploitation, through data scraping, that simply does not exist for physical records kept at a courthouse. Clerk Smith's decision to provide access to CNS because in her determination CNS did not pose a substantial risk of misuse, particularly given the terms and conditions of its access to the records, is a decision that is outside the scope of OES's statutory mandate.

Yet CNS asserted Count Four, making an as applied challenge to Virginia Code § 17.1-293, against Defendant Hade as well as Clerk Smith. The facts alleged, however, state that CNS was granted access when it specifically applied for it from a court clerk who had the authority to grant access, with specific additional terms and conditions imposed upon CNS, presumably because it was not an officer of the court who had a statutory right to access.

CNS does not fully articulate why these terms and conditions constitute a violation of its constitutional rights to equal access to OCRA. The terms and conditions merely replicate the protections created by limiting OCRA access to officers of the court. For example, officers of the court, such as attorneys, risk losing their license to practice law in Virginia if they violate the Rules of Professional Conduct with regard to their use of the OCRA database. The RPC include Rule 8.4, which defines it as "professional misconduct for a lawyer" to "commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law" and to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law." Va. Rules of Prof'l Conduct R.

13

8.4(b)-(c). Using an automated tool to scrape litigation data and sell it to third parties, or post it on the internet where third parties could misuse it, would certainly be a wrongful act even if it did not violate a criminal law and would reflect poorly on the lawyer's trustworthiness to abuse his or her access to the OCRA database in that way.

Furthermore, although CNS alleges it had to pay for access and had to agree to the terms and conditions imposed by the Non-Attorney Subscriber Agreement, it did not allege that attorneys did not also have to pay a fee or that attorneys did not have to agree to similar terms and conditions for access. CNS also does not specify if other non-attorneys granted access, such as paralegals or non-attorney employees of government agencies, had to sign an identical agreement or if the agreement complained of was specific to CNS. Without these facts, there is simply no way to assess how Clerk Smith applied the law to CNS and how that application of the law differed from others who were similarly situated and whether those differences served a rational state interest. Even with these facts there is no viable claim against Defendant Hade with respect to Count IV.

Count Four should be dismissed with prejudice because the facts as alleged by CNS demonstrate that the law was not, in fact, applied to it at all. Instead, Clerk Smith made an exception to the law for CNS, presumably based on its unusual position of being a courthouse news specific entity, which claims it has a legitimate need for digital access to circuit court records. To the degree that the law was applied to CNS because it had to agree to a Non-Attorney Access Agreement in order to gain access to OCRA, CNS has failed to allege sufficient facts to support an as applied challenge.

## CONCLUSION

Therefore, for the reasons stated above, this case should be dismissed as a whole for failure to state a claim. If any part of it survives, however, Defendant Hade should be dismissed as a party.

Respectfully submitted,

EXECUTIVE SECRETARY KARL R. HADE

By: */s/ Robert B. McEntee, III*
Counsel

| | |
|---|---|
| Mark R. Herring<br>Attorney General | Robert B. McEntee, III (VSB No. 89390)*<br>Erin R. McNeill (VSB No. 78816)*<br>Assistant Attorneys General |
| Samuel T. Towell<br>Deputy Attorney General | Office of the Attorney General<br>202 North Ninth Street<br>Richmond, Virginia 23219 |
| Marshall H. Ross<br>Senior Assistant Attorney General/<br>Trial Section Chief | Telephone: (804) 786-8198 (McEntee)<br>Telephone: (804) 317-0977 (McNeill)<br>Facsimile: (804) 371-0200<br>rmcenteeiii@oag.state.va.us |
| Jacqueline C. Hedblom<br>Assistant Attorney General/Unit Manager | emcneill@oag.state.va.us<br>*Counsel of Record for Defendant Karl R. Hade* |

## CERTIFICATE OF TRANSMISSION

I hereby certify that on August 10, 2021, I will electronically file the foregoing Memorandum in Support of Defendant's Rule 12(b)(6) Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

*/s/ Robert B. McEntee, III*