IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | ) |
| *Plaintiff,* | ) Civil Action No.3:21-cv-00460-HEH |
| v. | ) |
| KARL R. HADE, *et al.*, | ) |
| *Defendant.* | ) |

**DEFENDANT JACQUELINE C. SMITH'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

COMES NOW the Defendant, Jacqueline C. Smith ("Defendant" or the "Clerk"), by counsel, hereby submits this memorandum of law in support of her Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. Plaintiff Courthouse News Service ("Plaintiff" or "CNS") has failed to plead that it has suffered an injury to a right protected by the First Amendment, as CNS admits it has access to court records, and merely seeks a different method for exercising such access, and the statutory restriction on dissemination does not apply to CNS. CNS has failed to state any discrimination against CNS in violation of the Equal Protection Clause, as Virginia Code §17.1-293 is facially valid and the Clerk has acted in compliance with the duties imposed upon her under Va. Code §17.1-293 to further a legitimate state interest in the protection of sensitive court records from being posted on the publicly-available Internet.

**BACKGROUND**

Plaintiff Courthouse News Service ("CNS") is a California corporation specializing in news reporting about civil litigation in state and federal courts of the United States. (Am. Compl. ¶ 15.) Defendant is the Clerk of the Circuit Court for Prince William County, Virginia. (Am.

Compl. ¶ 19.) Along with other circuit courts in Virginia, Prince William County Circuit Court employs a remote access system to attorneys known as the Officer of the Court Remote Access ("OCRA"). (Am. Compl. ¶¶ 3, 5). OCRA provides Virginia-licensed attorneys remote access to civil, nonconfidential, public court filings via the internet. (Am. Compl. ¶ 3). As the name implies, OCRA is generally available to officers of the court (for an annual fee), but not to the general public. (Id.)

The clerks of some Virginia circuit courts, including Defendant, have denied Plaintiff access to OCRA based upon Virginia Code §17.1-293(B), which provides, in relevant part, that "no court clerk shall post on the Internet any document that contains the following information: (i) an actual signature, (ii) a social security number, (iii) a date of birth identified with a particular person, and (iv) the name of the person's parents so as to be identified with a particular person, (v) any financial account number or numbers, or (vi) the name and age of any minor child." (Am. Compl. ¶ 4.) The statute contains an exception, allowing for "secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk." (Id.) Subscriptions to OCRA are provided to Virginia-licensed attorneys as contemplated by that statute.

The Office of the Executive Secretary of the Supreme Court of Virginia ("OES") has taken the position that the Virginia Code does not support providing access to OCRA to anyone other than members of the bar. (Am. Compl. ¶ 59.) OES has further advised Plaintiff directly that, pursuant to Virginia Code §17.1-293(E)(7), it does not believe it is authorized to provide Plaintiff with access to OCRA. (Am. Compl. ¶ 72.) Defendant, as the Clerk of the Prince William County

Circuit Court, has denied Plaintiff access to OCRA. (Am. Compl. ¶ 66.) Further, in response to Defendant's inquiry to the Attorney General for the Commonwealth of Virginia, Defendant received an opinion letter stating that "pursuant to §17.1-293, circuit court clerks cannot grant the general public remote access to nonconfidential documents through OCRA." (Am. Compl. ¶ 73.)

Virginia Code §17.1-293 also provides that "data accessed by secure remote access" is not permitted "to be sold or posted on any other website or in any way redistributed to any third party" and that such data cannot be "be made available to the general public." (Am. Compl. ¶ 7.)  This provision contains no exceptions, including for Virginia-licensed attorneys.

Plaintiff does not assert that it has been denied access to nonconfidential civil filings, and admits that it "can access nonconfidential civil complaints at the circuit courts."  (Am. Compl. ¶ 44.)  In fact, "[a]t the time the civil complaints and other judicial filings are made available on OCRA, they have already been made public via public access terminals at the courthouse." (Am. Compl. ¶ 48.)

Plaintiff has filed its Amended Complaint (ECF No. 21) alleging violations of 42 U.S.C. §1983, and specifically asserting (i) a violation of Plaintiff's First Amendment rights based upon restrictions to remote access through OCRA; (ii) a violation of Plaintiff's First Amendment rights based upon the restrictions on dissemination of information obtained through OCRA; and (iii) a violation of Plaintiff's Fourteenth Amendment right to equal protection of the laws based upon OCRA's exclusive availability to attorneys.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff's obligation thus is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pled facts create "the mere possibility of misconduct." *Id.* at 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## ARGUMENT

### A. Plaintiff Has No First Amendment Right to Remote Access through OCRA.

#### a. The First Amendment Right to Civil Court Documents

The Supreme Court has long held that there is a First Amendment right to access to criminal trials. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 577, 100 S. Ct. 2814, 2827 (1980). While the Supreme Court has not specifically held that the First Amendment right of access applies to civil cases, most federal circuits that have addressed this issue, including the Fourth Circuit, have recognized that the First Amendment right of access applies to civil proceedings. *See, e.g., Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16, 23 (2d Cir. 1984), cert. denied, *Cable News Network, Inc. v. U.S. District Court*, 472 U.S. 1017 (1985); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983), cert. denied, 465 U.S. 1100

(1984); *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1983). The Fourth Circuit has specifically applied the First Amendment right of access to requests for documents pertaining to civil proceedings. *Rushford*, 846 F.2d at 253 ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case.")

However, this case does not involve the denial of access to documents filed in pending civil matters in the state circuit court. Plaintiff admits that it has access to these documents shortly after they are filed. Instead, Plaintiff objects that it does not have *remote* access to these documents. In making this claim, Plaintiff asserts the violation of a First Amendment right that simply does not exist.

An examination of Plaintiff's novel claim of a First Amendment right to remote access to documents filed in state civil cases suggests at least two paradigms for analysis: (i) the "experience and logic" test set forth in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L.Ed.2d 1 (1988)(*Press-Enterprise II)*, and (ii) the more relaxed scrutiny applied to limitations on the right of access that resemble "time, place, and manner" restrictions as contemplated in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 623, 102 S. Ct. 2613, 2628 (1982). Both approaches result in the conclusion that Plaintiff does not have a First Amendment right to remote access to civil court records.

b. The Experience and Logic Test

The test for determining whether a First Amendment right of access is available is: (1) whether the place and process have historically been open to the press and general public, and (2) whether public access plays a significant positive role in the functioning of the particular process in question. *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)(citing *Press-Enterprise II*).

This has been referred to as the "experience and logic" test. In order to satisfy the test, both the experience and logic prongs are required. *United States v. Appelbaum (In re United States)*, 707 F.3d 283, 291 (4th Cir. 2013).

In the context of an actual judicial proceeding, the "place and process" has generally referred to the proceeding itself; in the context of access to judicial documents, the "place and process" has generally referred to the type of document being sought. *See, for example, United States v. Doe*, 962 F.3d 139, 145-46 (4th Cir. 2020); *Appelbaum*, 707 F.3d at 291. In this case, Plaintiff is not being denied access to the documents in question; in fact, the documents are actually available at the courthouse *prior to* their availability on OCRA. (Am. Compl. ¶ 48.) To the extent that the "experience" prong of the task can be applied to remote access through the Internet, such access has not historically existed. The press and public have had contemporaneous access to civil filings for many years prior to the existence of the Internet or the evolution of remote access to court records.

### c. Restrictions on Time, Place, and Manner

Although strict scrutiny is ordinarily applied to examine an asserted infringement of a First Amendment right of access, "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech [will] not be subjected to such strict scrutiny." *Courthouse News Serv. v. Schaefer*, Nos. 20-1290, 20-1386, 2021 U.S. App. LEXIS 18863, at *15 (4th Cir. June 24, 2021)(citing *Globe Newspaper Co.*). When the practices complained of do resemble time, place, and manner restrictions, the court applies "more relaxed scrutiny." *Id.* (citing *Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020)).

In the case at bar, Plaintiff's access to the documents in question is not being restricted; rather, Plaintiff is simply not being granted the specific method of access available to officers of

the court.  Therefore, it is not apparent that any scrutiny is appropriate. However, to the extent that the fact that OCRA is only available to Virginia-licensed attorneys constitutes a limit on the manner of access, such a limitation need only be "content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Id.*  The restriction from publishing certain information on the Internet set forth in Virginia Code §17.1-293 is plainly based in a fair administration of justice and the protection of litigants with regard to sensitive information.

Additionally, making certain information available remotely to attorneys who practice before the court self-evidently aids in the orderly and efficient conduct of the court's administration of justice. It is also notable, as addressed in more detail below, that officers of the court are subject to regulation by both the Virginia State Bar and each individual local court in which they practice. *In re Moseley*, 273 Va. 688, 697, 643 S.E.2d 190, 195 (2007).  This is not true for Plaintiff or other members of the general public.

Plaintiff has failed to state a claim of violation of its First Amendment rights because Plaintiff does not have a First Amendment right to "remote access" and, to the extent there is any limitation on remote access in this case, such limitation is content-neutral and narrowly tailored to preserve the important interest in the fair and orderly administration of justice.  Count I should therefore be dismissed for failure to state a claim.

    **B. Because Plaintiff Has No First Amendment Right to Remote Access through OCRA, the Statutory Restriction on Dissemination of Information Obtained on OCRA Does Not Violate Plaintiff's First Amendment Rights.**

For the reasons stated above, Plaintiff has no First Amendment right to remote access through OCRA.  Therefore, any restriction on dissemination associated with information obtained through OCRA would be inapplicable to Plaintiff.  Since the only restriction on dissemination

about which Plaintiff complains relates to information obtained through OCRA, it can make no viable claim for violation of its First Amendment rights in relation to this limitation imposed upon users of OCRA.

Therefore, Count II should be dismissed for failure to state a claim.

### C. The Exclusive Availability of OCRA to Virginia-Licensed Attorneys Does Not Violate Plaintiff's Fourteenth Amendment Rights.

Success on an equal protection claim requires a plaintiff to first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly "that the unequal treatment was the result of discriminatory animus." *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *Morrison,* 239 F.3d at 654.

If the rule neither infringes a fundamental right nor disadvantages a suspect class, courts apply rational basis review. *Nat'l Ass'n for the Advancement of Multijurisdiction Practice (NAAMJP) v. Lynch*, 826 F.3d 191, 196 (4th Cir. 2016)(citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993). Under rational basis review, the challenged rule comes bearing a strong presumption of validity, and those attacking the rationality of the rule have the burden to negative every conceivable basis which might support it. *Id.* In other words, where there are plausible reasons for the rule, the court's inquiry is at an end. *Id.* Plaintiff does not allege that it is in a suspect class, and Plaintiff has alleged no First Amendment right to access that has been infringed, as discussed above. Plaintiff has pled no facts showing discriminatory animus by the Clerk; instead, Plaintiff has indicated that the Clerk has offered

access to Plaintiff, subject to the Clerk's non-delegable duty to comply with §17.1-293 by preventing the disclosure of sensitive financial and identification information online. The court's and the legislature's policy decision to protect sensitive information, and to entrust access to attorneys subject to its jurisdiction and regulation, constitute plausible reasons for the provisions of §17.1-293 at issue in this case, and for Defendant's decision to abide by the requirements of that statute.

If it were the case that the statute in question actually constituted a burden upon Plaintiff's First Amendment rights, the court would exercise strict scrutiny review, upholding the statute only if it is narrowly tailored to serve a compelling state interest. *Mitchell v. Comm'r of the SSA*, 182 F.3d 272, 274 (4th Cir. 1999). But even if strict scrutiny required that the statute in question is narrowly tailored to serve a compelling state interest, the provisions of §17.1-293 at issue in this case satisfy this requirement.

Virginia has an interest in both (i) protecting against the wholesale dissemination of its citizens' sensitive information and (ii) providing attorneys practicing before a particular circuit court all available tools for the efficient conduct and administration of the judicial system. Both of these interests are accomplished by the relevant provisions of §17.1-293. The statute recognizes the unique position of practicing attorneys as distinct from that of non-attorneys, in that (i) attorneys' remote access to court filings aids in the efficient conduct of particular cases and, more broadly, the judicial system and (ii) attorneys are subject to sanctions for violating the restrictions associated with remote access.

The Virginia Supreme Court has held that "independently of any statutory restriction, the courts of record of this Commonwealth might, in a proper case, suspend or annul the license of an attorney, so far as it authorized him to practice," and that "all courts of record in Virginia have

inherent power in a proper case to suspend or annul the license of an attorney practicing in the particular court which pronounces the sentence of disbarment." *In re Moseley*, 273 Va. 688, 695-96, 643 S.E.2d 190, 194 (2007). Further, "the court's authority to discipline attorneys and regulate their conduct in proceedings before that court is also a constitutional power derived from the separation of powers between the judiciary, as an independent branch of government, and the other branches." *Id.*

Count III should be dismissed for failure to state a claim, as the statute is narrowly tailored to serve a compelling state interest, Plaintiff is not in a suspect class, and Plaintiff has failed to plead any discriminatory animus by the Clerk.

## CONCLUSION

On the basis of the foregoing, all three counts of Plaintiff CNS's case should be dismissed for failure to state a claim.

Dated: October 12, 2021.

           Respectfully submitted,

             /s/ *John C. Altmiller*
           John C. Altmiller, Esq., VSB No. 34902
           Heather R. Steele, Esq., VSB No. 75473
           Pesner Altmiller Melnick & DeMers PLC
           8000 Westpark Drive, Suite 600
           Tysons, VA 22102
           703-506-9440 (phone)
           jaltmiller@pesner.com
           hsteele@pesner.com
           *Counsel for Defendant Jacqueline C. Smith*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 12th day of October, 2021, I will electronically file the foregoing Memorandum in Support of Defendant Smith's Rule 12(b)(6) Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

                                                  */s/ John C. Altmiller*
                                                  John C. Altmiller