**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:21-cv-00460-HEH |
| v. | ) | |
| | ) | |
| KARL R. HADE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**COURTHOUSE NEWS SERVICE'S OMNIBUS MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT KARL R. HADE'S RULE 12(b)(1) MOTION TO
DISMISS, DEFENDANT KARL R. HADE'S RULE 12(b)(6) MOTION TO DISMISS,
AND DEFENDANT JACQUELINE C. SMITH'S RULE 12(b)(6) MOTION TO DISMISS**

**Bryan Cave Leighton Paisner LLP**
Adam L. Shaw (VSB No. 89559)
Heather S. Goldman (admitted *pro hac vice*)
1155 F Street, NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
adam.shaw@bclplaw.com
heather.goldman@bclplaw.com

Jonathan E. Ginsberg (admitted *pro hac vice*)
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
jon.ginsberg@bclplaw.com

*Counsel for Plaintiff*
*Courthouse News Service*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 4

    About CNS ........................................................................................................................... 4

    The Relevant Virginia Statutes and Legislative History ..................................................... 5

    The Office of Executive Secretary's Officer of the Court Remote Access System ................. 7

    CNS' Requests for OCRA Access ....................................................................................... 9

        The Prince William Clerk ............................................................................................... 9

        The Executive Secretary ................................................................................................ 10

STANDARD OF REVIEW ..................................................................................................... 11

ARGUMENT .......................................................................................................................... 12

I.   The Eleventh Amendment Does Not Bar Suit Against the Executive Secretary ................... 12

    A.     The Court Should Deny the Executive Secretary's Rule 12(b)(1) Motion
           Because "the Jurisdictional Facts are Intertwined with Facts Central to the
           Merits of the Dispute" .......................................................................................... 12

    B.     The Executive Secretary is Not Immune from Suit under the Eleventh Amendment 13

II. Defendants' Rule 12(b)(6) Motions Lack Merit and Should be Denied ................................ 15

    A.     CNS Has Stated a Claim For Relief Under Section 1983 ........................................... 16

        1.   Defendants Have Violated CNS' First Amendment Rights ...................................... 17

            a.   There is a First Amendment Right of Access to
               Newly Filed Civil Complaints ........................................................................ 17

            b.   Defendants' Policies Cannot Survive Constitutional Scrutiny ...................... 18

        2.   Defendants' Policies, Practices, and Customs Deprive CNS of Equal Protection
           Under the Law ........................................................................................................ 23

            a.   CNS' Facial and As-Applied Challenges Must Be Sustained ........................ 28

CONCLUSION ....................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982) ........................................................................11, 12

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) .............................................................................................22

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
  814 F.3d 132 (2d Cir. 2016) ...............................................................15, 17, 18

*Carter v. Morris*,
  164 F.3d 215 (4th Cir. 1999) ...............................................................................17

*Citizens United v. Fed. Election Com'n*,
  558 U.S. 310 (2010) .............................................................................................29

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) .............................................................................................24

*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ...............................................................................18

*Courthouse News Serv. v. Planet*,
  947 F.3d 581 (9th Cir. 2020) ...........................................................................17, 19

*Courthouse News Serv. v. Schaefer*,
  440 F. Supp. 3d 532 (E.D. Va. 2020), *aff'd*, 2 F.4th 318 (4th Cir. 2021)...................... *passim*

*Courthouse News Serv. v. Schaefer*,
  2 F.4th 318 (4th Cir. 2021) ...................................................................... *passim*

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975).........................................................................................22, 23

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) ...........................................................15, 18, 19

*Donrey Media Group v. IKEDA*,
  959 F. Supp. 1280 (D. Haw. 1996) .......................................................................23

*Educ. Media Co. at Virginia Tech v. Insley*,
  731 F.3d 291 (4th Cir. 2013) ...............................................................................29

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ...................................................................................11

*Franks v. Ross*,
   313 F.3d 184 (4th Cir. 2002) ...................................................................................11

*Globe Newspaper Co. v. Pokaski*,
   868 F.2d 497 (1st Cir. 1989)....................................................................................22

*Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*,
   721 F.3d 264 (4th Cir. 2013) (en banc) ..................................................................29

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004)......................................................................................18

*High Peak Partners, LLC v. Board of Supervisors of Prince George County, Virginia*,
   Case No. 3:07CV757, 2008 WL 1733605 (E.D. Va. Apr. 14, 2008)
   (Hudson, J.)........................................................................................................23, 24

*Humanscale Corp. v. CompX Int'l, Inc.*,
   3:09-CV-86, 2009 WL 5091648 (E.D. Va. Dec. 24, 2009)....................................21

*Leigh v. Salazar*,
   677 F.3d 892 (9th Cir. 2012) ...................................................................................22

*Litman v. George Mason Univ.*,
   186 F.3d 544 (4th Cir. 1999) ...................................................................................13

*Los Angeles Cty. v. Humphries*,
   562 U.S. 29 (2010)...................................................................................................16

*Lytle v. Doyle*,
   326 F.3d 463 (4th Cir. 2003) ...................................................................................16

*D.T.M. ex rel. McCartney v. Cansler*,
   382 F. App'x 334 (4th Cir. 2010) ...........................................................................13

*McCullen v. Coakley*,
   573 U.S. 464 (2014).................................................................................................20

*Mitchell v. Commissioner of the Social Sec. Admin.*,
   182 F.3d 272 (4th Cir. 1999) ...................................................................................25

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)...........................................................................................16, 17

*Moody v. City of Newport News*,
   93 F. Supp. 3d 516 (E.D. Va. 2015) ........................................................................16

*Morrison v. Garraghty,*
239 F.3d 648 (4th Cir. 2001) ..................................................................25

*Mylan Labs, Inc. v. Matkari,*
7 F.3d 1130 (4th Cir. 1993) ..................................................................12

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986)..................................................................16

*Plumer v. Maryland,*
915 F.2d 927 (4th Cir. 1990) ..................................................................12

*Plyler v. Doe,*
457 U.S. 202 (1982)..................................................................23, 25

*Press-Enterprise Co. v. Superior Court,*
478 U.S. 1 (1986)..................................................................15, 17, 18, 28

*Project Veritas Action Fund v. Rollins,*
982 F.3d 813 (1st Cir. 2020), *petition for cert. filed* (U.S. May 17, 2021)............................29

*In re Providence Journal Co.,*
293 F.3d 1 (1st Cir. 2002)..................................................................22

*Richmond Med. Ctr. for Women v. Herring,*
570 F.3d 165 (4th Cir. 2009) (en banc) ..................................................................30

*Richmond Newspapers, Inc. v. Virginia,*
448 U.S. 555 (1980)..................................................................18

*S.C. Wildlife Fed'n v. Limehouse,*
549 F.3d 324 (4th Cir. 2008) ..................................................................14

*Semple v. City of Moundsville,*
195 F.3d 708 (4th Cir. 1999) ..................................................................16

*Smith v. Daily Mail Publishing Co.,*
443 U.S. 97 (1979)..................................................................23

*Soderberg v. Carrion,*
999 F.3d 962 (4th Cir. 2021) ..................................................................22-23

*United States v. Lawson,*
677 F.3d 629 (4th Cir. 2012) ..................................................................24-25

*United States v. Peters,*
754 F.2d 753 (7th Cir. 1985) ..................................................................18

*Verizon Md., Inc. v. Pub. Serv. Comm'n*,
   535 U.S. 635 (2002) ........................................................................................................13

*Virginia Dep't of State Police v. Washington Post*,
   386 F.3d 567 (4th Cir. 2004) ....................................................................................20, 22

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ........................................................................................................19

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) .........................................................................................14

*Woodson v. City of Richmond*,
   2 F. Supp. 3d 804 (E.D. Va. 2014) ...............................................................................16

*Ex parte Young*,
   209 U.S. 123 (1908) ..................................................................................................13, 14

**Statutes**

Va. Code § 8.01-420.8(A) ..............................................................................................7, 27

Va. Code § 17.1-225 ...................................................................................................5, 6, 26

Va. Code § 17.1-242 ............................................................................................................5

Va. Code § 17.1-293 .....................................................................................................*passim*

Va. Code § 17.1-293(B) ................................................................................................6, 26

Va. Code § 17.1-293(E) ........................................................................................6, 7, 26, 27

Va. Code § 17.1-293(H) .....................................................................................................7

Va. Code § 17.1-502 ...........................................................................................................7

Va. Code § 17.1-502(A) ...............................................................................................12, 14

**Other Authorities**

Va. Att'y Gen. Op. No. 00-031, 2000 WL 33187321 (July 27, 2000) ...........................6

Plaintiff Courthouse News Service ("CNS"), by counsel, hereby opposes the Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendant Karl R. Hade, in his official capacity as Executive Secretary (the "Executive Secretary") of the Office of Executive Secretary of the Supreme Court of Virginia ("OES"), and the Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendant Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia ("Prince William Clerk," and with the Executive Secretary, the "Defendants").[1]   The Defendants have offered no viable basis for dismissal, and their motions should be denied.

## PRELIMINARY STATEMENT

This case is about the discriminatory treatment of the general public and press, including CNS, with respect to access to new civil filings.   In violation of the First and Fourteenth Amendments, Defendants restrict remote electronic access to Virginia-barred attorneys, their staff, and officers of the court, precluding the press and the public from accessing new civil filings remotely.

For decades, members of the press could review and obtain copies of non-confidential, newly filed civil complaints at the counter in clerks' offices throughout Virginia, including at the Prince William Circuit Court.  They could then follow the newsworthy cases and research similar filings through the court clerks' records room.  This enabled journalists to inform interested members of the public about new civil actions in a contemporaneous manner, while those cases

---

[1] The Executive Secretary's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) is referred to herein as the "12(b)(1) Motion;" the Executive Secretary's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) is referred to as the "OES 12(b)(6) Motion;" and the Prince William Clerk's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) is referred to as the "Prince William 12(b)(6) Motion."  For brevity and the convenience of both the Court and the parties, CNS submits this omnibus memorandum of law in opposition to each motion to dismiss, as the factual and legal issues are inextricably linked.

were still newsworthy and likely to be the subject of public attention and discussion.  It also allowed them to write more informative stories about ongoing controversies based on the court record.  As technology advanced, public access computer terminals were placed in the clerks' offices for anyone to use to view and print copies of non-confidential, public court filings.  As part of the technological advances, OES created, and now maintains, manages, and administers, the Officers of the Court Remote Access system ("OCRA"), which provides for remote access through the Internet to the same non-confidential, public court filings available on the public access terminals in the clerks' offices.

Unlike nearly all federal district courts, including this Court, and a growing number of state courts across the country, that provide the press and public with remote access to newly filed civil complaints and other civil filings via court websites – enabling journalists to cover more courts in the era of digital news coverage where there is a 24/7 news cycle – OCRA is only offered to a special subclass of individuals: Virginia-barred attorneys, their staff, and officers of the court. Others, including CNS, are prohibited from utilizing OCRA for remote access.

The effect is that the practical ability of the press to report on new cases filed statewide and to follow events in those cases on a daily basis is impaired.  It is simply not possible for a news service, such as CNS, to send reporters on a daily basis, if at all, to the 120 courts throughout the Virginia circuit court system, approximately 90 of which utilize OCRA and cover an area of over 30,000 square miles.  This impediment to access undermines the benefit of public scrutiny and effectively results in suppression, all while one subclass of the public can review new filings remotely on a daily basis.  This unequal and preferential treatment deprives CNS and others who are not licensed to practice law in Virginia from equal treatment and unconstitutionally infringes on the First Amendment right of access to non-confidential, public court records.

The Fourth Circuit has made clear that the First Amendment "requires courts to make newly filed civil complaints available as expeditiously as possible." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) ("*Schaefer II*"). Nonetheless, Defendants attempt to evade the First Amendment right of access by arguing there is no First Amendment right of *remote* access. This argument misses the mark. Case law is clear that when a First Amendment right of access applies, as here, Defendants must meet their burden of justifying any access restrictions.

Instead of doing so, the Executive Secretary first argues that the Eleventh Amendment bars suit against him even though he has direct control over, and is responsible for, maintaining OCRA. Indeed, the Amended Complaint ("Complaint") alleges that the Executive Secretary plays a central role in the challenged conduct, as well as CNS' ability to obtain complete relief and, as such, he is not immune from suit. While Defendants also attempt to cloak their actions behind Virginia Code Section 17.1-293, which purports to prohibit remote access to confidential information, it is understood and alleged that the documents available on OCRA are not confidential; they are the same documents made available on the public access terminals at the courthouse. As such, Defendants' actions are not dictated by the language of Section 17.1-293. To the extent Section 17.1-293 can be interpreted to compel Defendants to restrict remote access or the dissemination of public information gathered remotely, the requirements of the First Amendment override the statute.

Defendants can provide remote access – and, in fact do provide such access *to all cases* to Virginia-barred attorneys, their staff, and officers of the court (not just the cases they are involved in) – but, as the Amended Complaint alleges, Defendants have intentionally declined to do so for CNS, restricting remote access for newsgathering purposes and prohibiting dissemination to the general public. By doing so, Defendants discriminate against the media through disfavored

3

treatment and impose restraints on protected speech.  These restrictions infringe CNS' First Amendment rights to gather and disseminate newsworthy information to which a constitutional right of access exists.

## FACTUAL BACKGROUND

**About CNS**

CNS is a nationwide news service that reports on civil ligation in state and federal courts throughout the country.  Complaint ¶ 15; Declaration of William Girdner ("Girdner Dec.") ¶ 6. Founded in 1990, CNS currently employs approximately 240 employees, most of them editors and reporters, who review and report on the day's civil complaints filed at their assigned courthouse(s) for publication in CNS' New Litigation Reports, which are sent to subscribers by the end of each day, and for stories on the CNS website.  Complaint ¶¶ 25, 31; Girdner Dec. ¶¶ 6-12.  While CNS' reporters traditionally visited their assigned courts in person, as the vast majority of federal courts and an increasing number of state courts are putting court records online, CNS' reporters are able to cover many courts remotely through the Internet.  Complaint ¶ 31; Girdner Dec. ¶ 12.  In addition to its New Litigation Reports, other CNS publications include a publicly available website, www.courthousenews.com, which is read by hundreds of thousands of people each month.  Complaint ¶ 26; Girdner Dec. ¶ 14.

The New Litigation Reports have more than 2,300 subscribers nationwide, including law firms, academic institutions, publicly traded companies, government entities, non-profit organizations, and news and entertainment media outlets.  Complaint ¶¶ 28-30; Girdner Dec. ¶¶ 15-17.  Other media outlets rely on CNS to learn about newly filed litigation, and CNS has been credited as the original source of reporting by newspapers, legal publications, magazines, television, radio, and online media.  Complaint ¶ 27; Girdner Dec. ¶¶ 18-19.

4

As part of this nationwide news coverage, CNS employs three reporters who are based in the larger metropolitan areas – Prince William, Norfolk, and Richmond – and who cover the state and federal trial and appellate courts of Virginia.   Complaint ¶ 32; Girdner Dec. ¶ 31.   A CNS reporter visits the Prince William Circuit Court Clerk's office on a daily basis to report on newly filed civil complaints for its New Litigation reports.  Girdner Dec. ¶ 35.[2]  Upon arrival at the clerk's office, the CNS reporter reviews all newly filed civil complaints made available for the reporter's review.   Girdner Dec. ¶ 35.[3]   The CNS reporter then reports on the newsworthy complaints by preparing original summaries for inclusion in the corresponding report.  *Id.*

**The Relevant Virginia Statutes and Legislative History**

In 1998, Virginia enacted a law permitting the clerks of each circuit court to provide remote online access to non-confidential court records.  Va. Code § 17.1-225.  In its entirety, Section 17.1-225 reads:

> The clerk of the circuit court of any county or city may provide remote access, including Internet access, to all nonconfidential court records on an automated case management or other system maintained by his office and described in § 17.1-242. The clerk shall be responsible for insuring that proper security measures are implemented and maintained to prevent remote access users from obtaining any

---

[2] The CNS reporter covering the Prince William County Circuit Court also covers the Fairfax County Circuit Court on a daily basis.  She then covers the circuit courts in Alexandria, Arlington, Fauquier, and Loudoun on a weekly basis.  CNS used to have a reporter covering the courts in and around Alexandria, but due to staffing constraints, those courts are now being covered by the Prince William reporter.  Complaint ¶ 33; Girdner Dec. ¶¶ 35-36.

[3] In *Courthouse News Serv. v. Schaefer*, CNS sought to address delays in access to newly filed complaints that occurred at the Prince William and Norfolk Circuit Courts as a result of indexing (docketing) and scanning paper-filed documents into the case management system.  After a four-day bench trial, the U.S. District Court for the Eastern District of Virginia, Norfolk Division found that the delays in access were not narrowly tailored to serve a government interest, and held that "the press and public, including [CNS], enjoy a qualified right of access to newly-filed civil complaints contemporaneous with the filing of the complaint" and that "'contemporaneous' in this context means 'the same day on which the complaint is filed, insofar as is practicable;' and, when not practicable, on the next court date."  *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 562 (E.D. Va. 2020) ("*Schaefer I*"), *aff'd*, *Schaefer II*, 2 F.4th 318.

> data that are confidential under this Code and to prevent the modification or
> destruction of any records by remote access users.  For purposes of this section,
> remote access users are those individuals who are not employees of the clerk's
> office.

Va. Code § 17.1-225.  In 2000, the Virginia Attorney General opined that "[t]he language of

§ 17.1-225 is clear and unambiguous" and that "[t]he statute expressly authorizes a circuit court

clerk to provide Internet access to all 'nonconfidential court records maintained by his office' [as

well as] 'case records' and 'administrative records' of the court."  Va. Att'y Gen. Op. No. 00-031,

2000 WL 33187321, *2 (July 27, 2000).  The Attorney General concluded that "a clerk may

provide Internet access to nonconfidential case management data maintained by the clerk's office."

*Id.*

In 2007, Virginia codified various clerical requirements and restrictions for the posting and

availability of certain personal and sensitive information through the remote access portal.  *See,*

*e.g.,* Va. Code § 17.1-293.  Virginia Code Section 17.1-293 contains two provisions that purport

to place limitations on the right of access to judicial documents.  First, Section 17.1-293(B)

provides that:

> Beginning January 1, 2004, no court clerk shall post on the Internet any document
> that contains the following information: (i) an actual signature, (ii) a social
> security number, (iii) a date of birth identified with a particular person, (iv) the maiden name
> of a person's parent so as to be identified with a particular person, (v) any financial
> account number or numbers, or (vi) the name and age of any minor child.

Va. Code § 17.1-293(B).  However, Section 17.1-293(E)(5) and (7) state that a Virginia circuit

court clerk can:

> 5.  Provid[e] secure remote access to any person, his counsel, or staff which
>     counsel directly supervises to documents filed in matters to which such person
>     is a party;
>
> [and]
>
> 7.  Provid[e] secure remote access to nonconfidential court records, subject to any
>     fees charged by the clerk, to members in good standing with the Virginia State

6

> Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk.

Va. Code § 17.1-293(E)(5); (E)(7).  Second, Section 17.1-293(H) provides that:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to a third party, and the clerk, in his discretion, may deny secure remote access to ensure compliance with these provisions.  However, the data accessed by secure remote access may be included in products or services provided to a third party of the subscriber provided that (i) such data is not made available to the general public and (ii) the subscriber maintains administrative, technical, and security safeguards to protect the confidentiality, integrity, and limited availability of the data.

Va. Code § 17.1-293(H).

Importantly, Virginia Code Section 8.01-420.8(A) places the burden of redacting

confidential information in an otherwise non-confidential court record on the filing party:

> Whenever a party files, or causes to be filed, with the court a motion, pleading, subpoena, exhibit, or other document containing a social security number or other identification number appearing on a driver's license…, or on a credit card, debit card, bank account, or other electronic billing and payment system, the party shall make reasonable efforts to redact all but the last four digits of the identification number.

Va. Code § 8.01-420.8(A).

**The Office of Executive Secretary's Officer of the Court Remote Access System**

A new civil complaint filed at the Prince William Circuit Court goes through several stages

before it is available for viewing online at either the courthouse via a public access terminal or

remotely via OCRA (for Virginia-barred attorneys, their staff, and officers of the court):  (1) initial

intake; (2) data entry into the Circuit Court Case Management System (CCMS);[4] and (3) scanning

---

[4] The Executive Secretary serves as "the administrator of the circuit court system, which includes the operation and maintenance of a case management system and financial management system and related technology improvements," which includes OCRA.  Va. Code § 17.1-502.

into the Case Imaging System (CIS).  Complaint ¶ 47; Girdner Dec. ¶ 28.[5]  Once a complaint is

scanned, it can be viewed on the courthouse public access terminals almost immediately and on

OCRA shortly thereafter (within five minutes).  Complaint ¶ 47; Girdner Dec. ¶ 29.

In order to receive remote access to judicial filings via OCRA, a potential user – currently

only Virginia-barred attorneys, their staff, and officers of the court – must enter into a subscriber

agreement.  Complaint ¶ 49.  After paying a nominal subscriber's fee – $200 annually for the

Prince William Circuit Court[6] – Virginia attorneys, their staff, and officers of the court have the

ability to view *all* civil, non-confidential, public court filings remotely over the Internet –

regardless of whether they are involved in the case.  This means that those select groups can review

new filings on any day of the week, at any time of day, and from any location in the world.  In

addition, Virginia attorneys can download, save, and print those filings for no extra charge.

Complaint ¶ 60.

The documents available on OCRA are non-confidential, public documents.  Indeed,

according to the Prince William Attorney Access page, "OCRA enables online inquiry only access

to currently scanned court case documents in the Case Imaging System, ***except for*** juvenile,

adoption and sealed cases, as well as those parts of a file that are marked confidential, restricted,

sealed, private addendum or victim/witness."  Complaint ¶ 51; *see also*

https://www.pwcva.gov/department/circuit-court/attorney-access (emphasis supplied) (last visited

---

[5] Fewer steps are required for complaints that are filed electronically, but the majority of cases are
still filed in paper form at the Prince William Circuit Court.

[6] According to the Attorney Subscriber Agreement For Remote Access to Prince William County
Circuit Court Case Documents known as the Officer of the Court Remote Access (OCRA)
("OCRA Subscriber Agreement"), "[t]he subscription fee is $200.00 per year for 1 attorney and 1
employee" and any "additional employee for the attorney is $75 per individual per year."  *See*
OCRA Subscriber Agreement, Complaint Ex. 1.

November 16, 2021).  And, as observed by the Court in *Schaefer I*, "the filer is responsible for redacting confidential information" and the Prince William Clerk is "ensuring that confidential information is protected while maintaining contemporaneous access." *Schaefer I*, 440 F. Supp. 3d at 560.

### CNS' Requests for OCRA Access

While CNS can access non-confidential civil complaints by sending a reporter to each of the circuit courts, this is not a viable option for all 120 Virginia circuit courts because the time and cost necessary are prohibitive.  Complaint ¶ 44; Girdner Dec. ¶¶ 26, 32-33.  Of the 120 Virginia circuit courts, CNS is only able to cover five of them live on a daily basis by sending a reporter to the courthouse to review new complaints.  Complaint ¶ 34; Girdner Dec. ¶ 33.  Thirteen other circuit courts are covered intermittently by sending a reporter to the courthouse, and the remaining 102 courts are covered only with docket information (*i.e.*, party names, case type, court name). Complaint ¶ 34; Girdner Dec. ¶ 33.[7]  This is because of the remote location of those courts, which in addition to the expense of hiring numerous additional reporters to cover each of those courts, makes it impossible for CNS to visit these courts at all.  Complaint ¶ 34; Girdner Dec. ¶¶ 26, 33. If CNS had access to OCRA, it would be able to, and would, cover the 93 circuit courts that use OCRA – which cover approximately 30,600 square miles – by reviewing the new complaints filed in those courts and posted on OCRA on a daily basis.  Complaint ¶ 35; Girdner Dec. ¶ 34.

### *The Prince William Clerk*

During a January 2019 deposition in *Schaefer I*, the Prince William Clerk testified that she has, "on occasion … used [her] discretion to provide – to offer to provide [OCRA] to others who

---

[7] Covering the courts via docket information is not adequate.  In order to truly report on a newly filed civil litigation, a reporter must be able to review the allegations as written in the complaint. Girdner Dec. ¶ 33.

need access to the information in the interest of being transparent and providing the highest service possible."  Complaint ¶ 65; Transcript of Jan. 8, 2019 Deposition of J. Smith ("J. Smith Dep."), 31:7-11, attached as Ex. A to the Declaration of Jonathan E. Ginsberg ("Ginsberg Dec.").  In that same deposition, the Prince William Clerk testified that she was willing to provide OCRA access to CNS.  Complaint ¶ 65; J. Smith Dep., 32:19-20; Girdner Dec. ¶ 38.  However, when CNS followed up regarding such access, the request was effectively denied because the CNS applicant did not include a Virginia bar license number.  Complaint ¶ 66 and Ex. 2; Girdner Dec. ¶ 39. Following that denial, the Prince William Clerk created a Non-Attorney Subscriber Agreement, *see* Complaint Ex. 4, and sent it to CNS.  Complaint ¶ 68; Girdner Dec. ¶ 40.  The Non-Attorney Subscriber Agreement charged an annual subscription fee of $1,200 (whereas the Attorney Subscriber Agreement only charges a $200 annual subscription fee).  Complaint ¶ 68 and Ex. 4; Girdner Dec. ¶ 40.  In addition, the Non-Attorney Subscriber Agreement imposed a variety of prohibitions on dissemination and publication, which are not found in the Attorney Subscriber Agreement.  Complaint ¶¶ 68-69; *compare* Complaint Ex. 1 *with* Ex. 4; Girdner Dec. ¶ 40.

CNS is willing to pay a $200 subscriber's fee for OCRA access to the Prince William Circuit Court and other courts throughout the Commonwealth.  Complaint ¶ 61; Girdner Dec. ¶ 41.  However, since the Prince William Clerk changed the terms of the Agreement, included a prohibition on the public dissemination of any reporting based on OCRA access, and increased the subscription cost ***sixfold***, CNS did not submit an application for access.  Complaint ¶ 61; Girdner Dec. ¶ 41.

### *The Executive Secretary*

OES plays an integral role in the administration, operation, and maintenance of OCRA and other technology for the Virginia circuit court system.  According to the Attorney Access Page for

the Prince William County Circuit Court, OCRA "is the Office of the Executive Secretary of the Supreme Court of Virginia's (SCV) Officer of the Court Remote Access (OCRA) system that enables remote viewing of documents in the Virginia Judicial Case Imaging System."  Complaint ¶ 50; *see also*  https://www.pwcva.gov/department/circuit-court/attorney-access.   The OCRA Attorney Subscriber Agreement for the Prince William County Circuit Court also defines OCRA as "the OES's Officer of the Court Remote Access system…."  Complaint ¶ 50; Complaint Ex. 1.

Given the fact that OCRA is OES' system, CNS also requested access from the Executive Secretary.  Complaint ¶ 71 and Ex. 5; Girdner Dec. ¶ 42.  In response to that request, the Executive Secretary stated that "[a]lthough this Office hosts the online records viewable through OCRA, after carefully reviewing your request and applicable Virginia statutes, we do not believe we are legally authorized to provide you with the access you request."  Complaint ¶ 72 and Ex. 6.

## STANDARD OF REVIEW

The standard of review for the motions to dismiss, including the 12(b)(1) Motion, is the same for any motion brought under Fed. R. Civ. P. 12(b)(6).  The Executive Secretary has not claimed that any jurisdictional allegation contained in the Amended Complaint is not true, and thus any claim for lack of jurisdiction must be based on the failure to allege facts upon which subject matter jurisdiction can be based.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  In those cases, the facts alleged in the complaint are taken as true.  *Id.*

On a 12(b)(6) motion, the allegations in a complaint are viewed "in a light most favorable to the plaintiff …  and … all well-pleaded allegations" are accepted as true.  *Franks v. Ross*, 313 F. 3d 184, 192 (4th Cir. 2002) (citation omitted).  In addition, a district court is required to "draw[] all reasonable … inferences from those facts in the plaintiff's favor…."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  A complaint should not be dismissed unless it is

11

certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993).

## ARGUMENT

### I. The Eleventh Amendment Does Not Bar Suit Against the Executive Secretary

#### A. The Court Should Deny the Executive Secretary's Rule 12(b)(1) Motion Because "the Jurisdictional Facts are Intertwined with Facts Central to the Merits of the Dispute"

As a threshold matter, "[w]hen a defendant moves for dismissal both on lack of subject matter jurisdiction grounds, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6), 'the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiffs' case.'" *Plumer v. Maryland*, 915 F.2d 927, 932 n.5 (4th Cir. 1990). This is particularly true "in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute. It is the better view in such cases the entire factual dispute is appropriately resolved only by a proceeding on the merits." *Adams*, 697 F.2d at 1219.

Here, the Executive Secretary's role in the challenged state action is central to the merits of the dispute in several ways – all of which are clearly alleged in the Amended Complaint. Under Virginia law, "[t]he Executive Secretary serves as 'the administrator of the circuit court system, which includes the operation and maintenance of a case management system.'" Complaint ¶ 16 (quoting Va. Code § 17.1-502(A)). The Amended Complaint alleges – and the Executive Secretary does not deny – that OES exercises direct control over OCRA. Complaint ¶ 50. Indeed, the Executive Secretary acknowledges that he "provides the technology platform through which a circuit court clerk may elect to provide access to OCRA." 12(b)(1) Motion, at 6. Likewise, the Executive Secretary does not dispute that the OCRA login page "was created by OES and would need to be edited by OES to allow use by CNS or other member of the media or public." Complaint

¶ 55.  Nor does he dispute that "[t]he servers that store the programs and data are maintained and managed by the OES."   Complaint ¶ 56.  Finally, the Executive Secretary altogether ignores evidence set forth in the Amended Complaint that "an OES designee testified that the restriction of OCRA to Virginia-barred attorneys was an 'OES-imposed requirement' and that '[i]t's always been [OES'] stance that the Code does not support providing [OCRA] to anyone other than members of the bar.'"   Complaint ¶ 59; *see infra* at 21.

These allegations, taken as true (which they must be for purposes of this motion), establish that the Court has subject matter jurisdiction over this dispute.  At the very least, the undisputed allegations in the Complaint demonstrate that the facts that establish this Court's jurisdiction go to the very core of the alleged violations of CNS' First and Fourteenth Amendment rights.  For this reason alone, the Court should deny the Executive Secretary's Rule 12(b)(1) motion to dismiss.

### B.   The Executive Secretary is Not Immune from Suit under the Eleventh Amendment

"Although the Eleventh Amendment generally bars individual suits against non-consenting states and state officers, an exception exists under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), for official capacity suits requesting prospective relief to achieve the officials' compliance with federal law."  *D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334, 337 (4th Cir. 2010) (citing *Litman v. George Mason Univ.*, 186 F.3d 544, 549-50 (4th Cir. 1999)).  "In determining whether the *Ex parte Young* exception applies, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Cansler*, 382 F. App'x at 337 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)) (alteration and internal quotes omitted).

"The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is

13

not yet imminent." *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 330 (4th Cir. 2001). Furthermore, the official's "special relation" or "connection" to the challenged conduct "need not be *qualitatively* special; rather, 'special relation' under *Ex parte Young* has served as a measure of *proximity* to and *responsibility for* the challenged state action." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008) (emphasis in original).  Thus, this requirement is not intended to shield officials from liability.  Rather, it "ensures that a federal injunction will be effective with respect to the underlying claim."  *Id.*

Here, the Executive Secretary attempts to escape liability by arguing *ipse dixit* that "Virginia law grants circuit court clerks the exclusive legal custody of all records filed in their respective circuit courts."  12(b)(1) Motion, at 6.  Be that as it may, the Executive Secretary overlooks that OES is vested with sole authority for "the operation and maintenance of a case management system."  *See* Va. Code § 17.1-502(A).  Thus, even if the Executive Secretary is not a "legal gatekeeper" of access to court records, as he contends, he is unequivocally *proximate to* and *responsible*, at least in part, for the challenged conduct.  *Limehouse*, 549 F.3d at 333.

The Executive Secretary's role is central to the facts of this case and to CNS' ability to obtain complete relief.  While he argues that he has "no authority to grant access to records which were properly under the custody and control of a Circuit Court clerk," 12(b)(1) Motion, at 3, he conveniently ignores that OES, by virtue of its sole authority over the OCRA system, is directly responsible for ensuring the availability and accessibility of the court records at issue.  Even if the court clerks may "grant" the requested access in a purely legal sense, the clerks do not control the OCRA system.  By law, that role belongs to OES.  The facts, as alleged in the Amended Complaint, show that the Executive Secretary's concrete role in this dispute is squarely within the *Ex parte Young* exception to the Eleventh Amendment.  Therefore, this Court has subject matter jurisdiction

14

of this case, and the Court should deny the Executive Secretary's motion to dismiss for lack of subject matter jurisdiction.

## II.    Defendants' Rule 12(b)(6) Motions Lack Merit and Should be Denied

Filing a complaint is the opening bell in a new civil lawsuit.  Through the complaint, the public – usually via the press – learns the power of the judiciary has been invoked, by whom, and to what end.  The "fact of filing a complaint, whatever its veracity, is a significant matter of record," *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016), and every court to have considered the question – including the U.S. District Court for the Eastern District of Virginia, Norfolk Division, and the U.S. Court of Appeals for the Fourth Circuit – has found the public and press' right of access to new complaints is grounded not only in the common law, but in the more protective First Amendment.  *Schaefer I*, 440 F. Supp. at 555.

In an attempt to circumvent the fact that both this Court and the Fourth Circuit have found that there is a First Amendment right of access to newly filed civil complaints, Defendants argue that there is no First Amendment right of *remote* access.  *See* OES 12(b)(6) Motion at 7-9; Prince William 12(b)(6) Motion at 4-7.  In so arguing, however, Defendants ignore the two-step process established in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enterprise II*"), which first asks whether a particular document or proceeding has historically been open to the press and public, *i.e.,* the "experience and logic" test, and then, after finding a right of access, considers whether Defendants have met their burden of justifying *any* access restrictions by application of the requisite level of constitutional scrutiny.  *Id.* at 8-10; *see also Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014).  The question in this case – whether Defendants' policies and practices of (i) restricting remote access to non-confidential new civil filings to Virginia-barred attorneys only, and precluding such access to the general public and press, and (ii)

prohibiting the dissemination of non-confidential new civil filings accessed remotely, violate the First Amendment right of access – must be answered by applying the *Press Enterprise II* two-step analysis.

A.     **CNS Has Stated a Claim For Relief Under Section 1983**

To establish liability under Section 1983, a plaintiff must show that the defendant(s), acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused injury. *Moody v. City of Newport News,* 93 F. Supp. 3d 516, 529 (E.D. Va. 2015); *Woodson v. City of Richmond,* 2 F. Supp. 3d 804, 809 (E.D. Va. 2014). Section 1983 liability attaches where the deprivation of constitutional rights was caused by an official policy, custom or practice. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978) (Section 1983 must be based on an official policy or custom); *Los Angeles Cty. v. Humphries,* 562 U.S. 29, 36 (2010) (terms such as "usage" and "practice" are customs for which Section 1983 liability is appropriate).

A policy or custom giving rise to Section 1983 liability can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted). "An official policy often refers to 'formal rules or understandings … that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time'… and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville,* 195 F.3d 708, 712 (4th Cir. 1999) (*quoting Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986)). Outside of formal decision making, a custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or

usage' with the force of law." *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell,* 436 U.S. at 691).

### 1.     Defendants Have Violated CNS' First Amendment Rights

#### a.     There is a First Amendment Right of Access to Newly Filed Civil Complaints

It is settled in the Fourth Circuit that "the press and public enjoy a First Amendment right of access to newly filed civil complaints." *Schaefer II,* 2 F.4th at 328.  The First Amendment right of access is confirmed by application of the "experience" and "logic" test, which considers whether the documents "'have historically been open to the press and general public'" ("experience") and "'whether public access plays a significant positive role in the functioning of the particular process in question'" ("logic").  *Press-Enterprise II,* 478 U.S. at 8-10; *see also Schaefer II,* 2 F.4th at 326-27.  "[E]ach federal court to reach this question ha[s] found that the First Amendment applies," *Schaefer I*, 440 F. Supp. 3d at 555, including the Second, Fourth, and Ninth Circuits.  *Bernstein*, 814 F.3d at 141; *Schaefer II,* 2 F.4th at 326-27 (affirming 440 F. Supp. 3d 532); *Courthouse News Serv. v. Planet,* 947 F.3d 581, 591 (9th Cir. 2020).

Case law establishes a long history, or experience, of access to complaints, including newly filed ones.  *See, e.g., Schaefer II,* 2 F.4th at 327 ("the experience prong supports a First Amendment right of access to civil complaints"); *Bernstein*, 814 F.3d at 141 ("experience" supports First Amendment right of access to complaints, which have "historically been publicly accessible by default, even when they contain arguably sensitive information").  Experience also shows – despite Defendants' assertions to the contrary – that there is a history of courts around the country providing remote access to new civil filings – *i.e.*, this Court and all other federal courts (through PACER), as well as state courts in California, Louisiana, Massachusetts, Oklahoma, Tennessee, and Washington – in which several of the courts are predominantly paper-filing courts – and within

17

Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Maine, Minnesota, Mississippi, Montana, Nevada, New Jersey, New Mexico, New York, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, and Utah. Girdner Dec. ¶¶ 24-25.

"Logic" considers "whether public access plays a significant positive role in the functioning of the particular process in question," distinguishing between "governmental processes [that] operate best under public scrutiny" and those that "would be totally frustrated if conducted openly." *Press-Enterprise II,* 478 U.S. at 8-9. Like "docket sheets for civil proceedings" – another category of records to which a First Amendment right of access applies, *Doe,* 749 F.3d at 268-69 – complaints "do not constitute the kinds of government records that function properly only if kept secret, like grand jury proceedings." *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 96 (2d Cir. 2004). Moreover, "logic" recognizes that the access right stems from "the first amendment's 'core purpose' of assuring free public discussion." *United States v. Peters,* 754 F.2d 753, 758 (7th Cir. 1985) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980)). A complaint is "the cornerstone of every case, the very architecture of the lawsuit." *Bernstein,* 814 F.3d at 140. Access to complaints is thus essential for public discussion about civil suits to be "informed," *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785, 787-88 (9th Cir. 2014), and, as this Court correctly concluded: "the experience and logic test is satisfied and …the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaints." *Schaefer I*, 440 F. Supp. 3d at 558. *See also Schaefer II*, 2. F.4th at 328 (same).

b.    Defendants' Policies Cannot Survive Constitutional Scrutiny

The Fourth Circuit concluded in *Schaefer II* that the First Amendment requires contemporaneous access to newly filed civil complaints "as expeditiously as possible" based on

the facts "[i]n the context of th[e] case."  2 F.4th at 328; *see also Planet*, 947 F.3d at 594 ("the qualified right of access to nonconfidential civil complaints arises when they are filed with the court").  As such, the Fourth Circuit affirmed a February 2020 declaratory judgment issued by Judge Henry Coke Morgan Jr., after a four-day bench trial, which held that the press and public enjoy a right of access to newly filed complaints "contemporaneous with the filing of the complaint," emphasizing that same-day access is required "insofar as practicable." *Schaefer I*, 440 F. Supp. 3d at 562.  Despite the Executive Secretary's assertion to the contrary, *see* OES 12(b)(6) Motion, at 7, the foregoing case law is not limited to a right of *physical* access.  Thus, in the context of a court, like Defendants' courts, where remote access is available, and thus practicable for all, restricting such access to Virginia-barred attorneys interferes with CNS' right to contemporaneous access "as expeditiously as possible."

To overcome this First Amendment right of access, Defendants bear the burden of satisfying either strict scrutiny or time, place, and manner scrutiny.  Under the law of this Circuit, their policies, customs, or procedures fail to satisfy either type of constitutional scrutiny.  To satisfy strict scrutiny, Defendants must establish that withholding remote access and prohibiting the dissemination of filings accessed remotely satisfies a "compelling governmental interest" that is "narrowly tailored to serve that interest.'"  *Doe,* 749 F.3d at 266 (quoting *Press Enterprise II,* 464 U.S. at 510); *see also Schaefer I*, 440 F. Supp. 3d at 559.   To prove their policies, practices, and customs are reasonable time, place, or manner restrictions, the Defendants must offer facts showing their policies, practices, or customs are "'narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information.'"   *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) (citation omitted). The restriction "must not 'burden substantially more speech than is necessary to further the

government's legitimate interests.'" *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Defendants cannot meet their burden.

Defendants deny that they are restricting access and argue that the restriction on publication is based "in a fair administration of justice and protection of litigants with regard to sensitive information." Prince William 12(b)(6) Motion, at 6-7; OES 12(b)(6) Motion, at 11-12. For his part, the Executive Secretary states that CNS has "alleged no other facts" showing that OES or the Executive Secretary "has the power to grant access to OCRA, or punish the dissemination of information gleaned from OCRA." OES 12(b)(6) Motion, at 6. And, for her part, the Prince William Clerk states that CNS' access is not being restricted, rather "[CNS] is simply not being granted the specific method of access available to officers of the court." Prince William 12(b)(6) Motion, at 6-7. But, blanket denials are not sufficient and do not satisfy Defendants' burden under any level of constitutional scrutiny under the *Press Enterprise II* balancing test – Defendants must "present specific reasons in support of [their] position" of denying remote access and prohibiting dissemination. *See Virginia Dep't of State Police v. Washington Post,* 386 F.3d 567, 575 (4th Cir. 2004).

The Executive Secretary fails to even address how his policy of enforcing a restriction on remote access and prohibition of dissemination survives either strict or intermediate scrutiny, and his motion fails for that reason alone. Instead of addressing the constitutional question, as he must, the Executive Secretary argues simply – and erroneously – that CNS "makes few factual allegations as to the Executive Secretary" and that CNS' claims do not implicate the First Amendment. OES 12(b)(6) Motion, at 5, 7-9. Both of these arguments self-evidently lack merit.

Taking the later argument first, as explained above, the First Amendment is clearly implicated by this case as there is a First Amendment right to the documents in question that are

20

being restricted.  As to allegations against the Executive Secretary, the Amended Complaint contains numerous detailed allegations, including, but not limited to: (i) the Executive Secretary is the administrator of the Virginia circuit court system, which includes OCRA, Complaint ¶ 37; (ii) OCRA is described in several places as "the Office of the Executive Secretary of the Supreme Court of Virginia's (SCV) Office of the Court Remote Access (OCRA) system," Complaint ¶ 50; (iii) the OCRA login page is a centralized system that was created by OES and would need to be edited by OES, Complaint ¶¶ 53, 55; (iv) the servers that store the programs and data are maintained by OES, Complaint ¶ 56; and (v) the Attorney Subscriber Agreements release OES from liability.  Complaint ¶ 57.  In addition, during a Federal Rule of Civil Procedure 30(b)(6) deposition in the *Schaefer* matter, Robert Smith, the then-director of the department of judicial information and technology for OES, testified that the restriction of OCRA to Virginia-barred attorneys was an "OES-imposed requirement" and that "[i]t's always been [OES'] stance that the Code does not support providing [OCRA] to anyone other than members of the bar."  Complaint ¶ 59; Transcript of Dec. 19, 2018 Deposition of Robert Smith ("R. Smith Dep."), 97:24-98:21, attached as Ex. B to the Ginsberg Dec.  While the Executive Secretary questions the relevance of Robert Smith's deposition statements, it was OES who chose Mr. Smith as their designee, and Mr. Smith testified that he understood that he was appearing as a designee of OES and that his testimony would bind OES.  R. Smith Dep., 9:3-9.  *See Humanscale Corp. v. CompX Int'l, Inc.*, 3:09-CV-86, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009) (At the Rule 30(b)(6) deposition, the corporate designee "speak[s] for the corporation" and gives "binding answers for the corporation.") (internal citation omitted).  Moreover, the Executive Secretary admits that "[a]s the administrator of OCRA, OES has an interest in defending the constitutionality of Virginia's statutory scheme regulating who has access to OCRA."  OES 12(b)(6) Motion, at 13.

21

While the Prince William Clerk addresses the experience and logic test, she simply and conclusively states that the limitations are "content-neutral and narrowly tailored to preserve the important interest in the fair and orderly administration of justice," without providing any explanation as to how or why.   Prince William 12(b)(6) Motion, at 7.   Importantly, it is the Defendants who "ha[ve] the burden to demonstrate why more access is not better than less." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989).   A court "must, on a case-specific basis, construct a balance" which must be supported by "specific findings; the First Amendment right of public access is too precious to be foreclosed by conclusory assertions or unsupported speculation." *In re Providence Journal Co.*, 293 F.3d 1, 13 (1st Cir. 2002); *see also Virginia Dep't of State Police,* 386 F.3d at 575.   Put another way, "a court cannot rubber-stamp an access restriction simply because the government says it is necessary." *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012).   As discussed in more detail below, the access restrictions here are not necessary since the documents available on OCRA are non-confidential and already public. *See infra* at 27-28.

Finally, with respect to the prohibition on disseminating information accessed via remote means, "[a]s a general matter, 'state action to punish the publication of truthful information seldom can satisfy constitutional standards.'" *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (citation omitted).   That principle carries its greatest weight when the information to be published is derived from a public source, such as court records. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496 (1975) ("Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it.").   For that reason, courts have held that governmental efforts to restrict the dissemination of such information must be narrowly tailored to satisfy a state interest of the highest order. *See Soderberg v. Carrion*, 999 F.3d 962,

969 (4th Cir. 2021) ("plaintiffs' copies of the official court recordings of state criminal proceedings constitute 'truthful information' that was 'released to the public in official court records.' As such, the broadcasting of those lawfully obtained records cannot constitutionally be punished 'absent a need to further a state interest of the highest order.'" (quoting *Cox Broadcasting Corp.*, 420 U.S. at 495-96 and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979))). As discussed above, Defendants fail to meet their heavy burden, under any level of constitutional scrutiny, to justify the access restrictions challenged here.

### 2. Defendants' Policies, Practices, and Customs Deprive CNS of Equal Protection Under the Law

By preventing CNS and other non-attorneys from exercising their right of access to non-confidential, public court filings, Defendants' policies, practices, and customs infringe fundamental constitutional rights and deprive non-attorneys, including CNS, of equal protection under the law. *See, e.g.*, *Donrey Media Group v. IKEDA*, 959 F. Supp. 1280, 1287 (D. Haw. 1996) (holding statute unconstitutional because it granted preferred access to voter registration lists to some members of the public while generally denying it to the press without a legitimate state interest).

Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is essentially a direction that "all persons similarly circumstanced should be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). *See also High Peak Partners, LLC v. Board of Supervisors of Prince George County, Virginia*, Case No. 3:07CV757, 2008 WL 1733605, *10 (E.D. Va. Apr. 14, 2008) (Hudson, J.) ("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper

execution through duly constituted agents."). As this Court has previously stated, "in essence, the equal protection clause keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *High Peak Partners*, 2008 WL 1733605, at *10. To state an equal protection claim, a plaintiff must allege that (1) "they have been treated differently than others with whom they are similarly situated," and (2) "the unequal treatment was the product of intentional or purposeful discrimination." *Id.* Here, CNS alleges both that they are being treated differently and that the unequal treatment was intentional.

Defendants do not dispute that they are treating CNS differently than Virginia-barred attorneys.[8] In fact, the Executive Secretary concedes that "Virginia law treats officers of the court differently from members of the general public, including the press, who are not officers of the [C]ourt" and that "CNS has met the first prong of an Equal Protection claim." OES 12(b)(6) Motion, at 10.[9] With respect to the intent prong, the Executive Secretary mistakenly argues that CNS is required to "identify itself as a member of a protected class which might trigger heightened scrutiny." OES 12(b)(6) Motion, at 11. Not so. Membership in a protected or suspect class is not required; it is only relevant to determining the requisite level of scrutiny. Courts apply strict scrutiny "when state laws impinge on personal rights protected by the Constitution." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *United States v. Lawson*, 677 F.3d

---

[8] CNS is clearly "similarly situated" to a Virginia-barred attorney who wants to remotely access a civil filing, especially if that filing is in a case he or she is not involved in. Furthermore, CNS does not have information at this time regarding whether other media organizations have been granted subscriber access to OCRA. The Prince William Clerk, however, did testify that she has, "on occasion … used [her] discretion to provide – to offer to provide [OCRA] to others who need access to the information in the interest of being transparent and providing the highest service possible." Complaint ¶ 65; J. Smith Dep. 31:7-11.

[9] The Prince William Clerk does not address the first prong of an equal protection claim in her motion. *See generally* Prince William 12(b)(6) Motion.

629, 637 (4th Cir. 2012); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Mitchell v. Commissioner of the Social Sec. Admin.*, 182 F.3d 272, 274 (4th Cir. 1999) (if a "statute employs a suspect class *or* burdens the exercise of a constitutional right, [the court] exercise[s] strict scrutiny review, upholding the statute only if it is narrowly tailored to serve a compelling state interest") (emphasis added).   Thus, when a defendant restricts a constitutional right, as here, a state must demonstrate that its classification "has been precisely tailored to serve a compelling governmental interest."   *Plyler*, 457 U.S. at 217; *see also Lawson*, 677 F.3d at 637.   A legitimate state interest plainly does not exist for providing preferential remote access to *any* attorney who chooses to view a court filing (regardless of whether or not he or she represents a party) for purposes of informing a client, reporting on it in a newsletter, or out of professional curiosity.   The interest which attorneys in general have in such information is no more paramount than the interest of the press or the public.

Moreover, the Amended Complaint clearly shows that both Defendants intended to discriminate against CNS.   For her part, the Prince William Clerk intentionally drafted a Non-Attorney Subscriber Agreement that included very different terms than those included in the Attorney Subscriber Agreement – she changed the terms of the Agreement to include a prohibition on the dissemination of public information accessed remotely and increased the cost for non-attorneys six times the amount charged to attorneys.   Complaint ¶¶ 68-69; *compare* Complaint Ex. 1 *with* Ex. 4.   And, with respect to the Executive Secretary, all OCRA documentation indicates that it is for officers of the court only, clearly restricting access against non-attorneys (including CNS).   Complaint ¶ 53.

Through the use of OCRA, attorneys can view court documents 24 hours a day, 7 days a week – from the comfort of their home or office (or mobile device) – and are able to print out

copies of documents for no additional cost above the annual OCRA subscription fee.  The public and the press, on the other hand, must incur the time and expense of traveling to the courthouse to review those very same records.  Without OCRA access, one must travel to 93 circuit courts in an area that covers over 30,000 square miles to see newly filed complaints, and other court records, that Virginia-licensed attorneys can see from any device with Internet access.  *See* Girdner Dec. ¶ 26.  On top of the time and expense incurred for travel, the press and the public also have to pay a fee for any records they want copied.  And, while an attorney can access these documents at any time during the day or night, the press and the public only have access during court operating hours.  For a news service such as CNS that covers the great swath of civil litigation, this means daily visits to the courthouse at a cost that far exceeds the amount Virginia attorneys currently pay for access to OCRA.  And in Virginia, where CNS employs three reporters, visiting the 120 Virginia circuit courts (or even 93 OCRA courts) on a daily basis, if at all, is plainly not feasible. *Id.*

In moving to dismiss CNS' equal protection claim, Defendants ignore Virginia Code Section 17.1-225, which provides that "[t]he clerk of the circuit court of any county or city may provide remote access, including Internet access, to all non-confidential court records on an automated case management or other system maintained by his office."  Va. Code § 17.1-225. Section 17.1-225 does not limit access to only Virginia-barred attorneys.  Rather than address this Code section, Defendants rely on Virginia Code Section 17.1-293, but that Section likewise does not explicitly restrict access to attorneys only.  Instead, Section 17.1-293(B) prevents court clerks from disclosing certain personal identifiers (*i.e.*, an actual signature, social security number, date of birth) on the Internet, *see* Va. Code § 17.1-293(B), and Section 17.1-293(E) provides carve-outs for clerks to "[p]rovid[e] secure remote access to any person, his counsel, or staff which counsel

directly supervises to documents filed in matters to which such person is a party" and to "[p]rovid[e] secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar…." Va. Code § 17.1-293(E)(5); (E)(7). But Section 17.1-293 does not prohibit remote public access to court records that do not contain personal identifiers, and Virginia law expressly puts the burden of redacting confidential information on the filing party. *See* Va. Code § 8.01-420.8(A).[10]

Nonetheless, Defendants assert that Virginia Code Section 17.1-293 requires them to restrict access to all court records – regardless of whether they contain personal identifiers – in violation of both the First Amendment and the Equal Protection Clause. Defendants' generalized concerns about "protecting against the wholesale dissemination of … sensitive information" and "providing attorneys … all available tools for the efficient conduct and administration of the judicial system," Prince William 12(b)(6) Motion, at 9; OES 12(b)(6) Motion, at 11, fail to satisfy Defendants' constitutional burden because the allegations demonstrate that there is no nexus between remote access to new civil filings and the protection of confidential information available on OCRA. First, because the filing party is required to redact any confidential information before filing, a less restrictive alternative to Defendants' policies and practices is already in place. *See* Va. Code § 8.01-420.8(A). Second, by the time the documents are available on OCRA, they have already been made available to the public at the courthouse. According to the Prince William Attorney Access page, "OCRA enables online inquiry only access to currently scanned court case documents in the Case Imaging System, except for juvenile, adoption and sealed cases, as well as those parts of a file that are marked confidential, restricted, sealed, private addendum or

---

[10] In the rare circumstance, if ever, that confidential information has been improperly included by a filing party, it can be addressed thereafter, as is done in the vast majority of courts that provide remote access. *See* Girdner Dec. ¶ 46.

victim/witness." Complaint ¶ 51. Third, there is no valid legal basis for any distinction to be made between providing remote access to all Virginia-barred attorneys and providing remote access to CNS, a news service that provides information to lawyers and the general public. In fact, while Defendants appear to justify their restriction of remote access to Virginia-barred attorneys on the ground that attorneys are governed by the Rules of Professional Conduct which prohibit the disclosure of personal identifiers, *see* OES 12(b)(6) Motion, at 12; Prince William OES Motion, at 7, journalists abide by similar ethics proscriptions precluding the disclosure of such information in news stories. *See* Girdner Dec. ¶ 45. And fourth, Defendants' concerns are shared by all courts, yet other courts – including this Court – allow the press and the public remote access to new filings. *See* Girdner Dec. ¶ 46.

### a.   CNS' Facial and As-Applied Challenges Must Be Sustained

The two-step *Press-Enterprise II* process to establish liability under Section 1983 discussed above is universally applied. Even when the restriction on access is a broadly applicable statute or rule as opposed to a closure or sealing order in a particular case, it is not necessary to determine whether the party challenging the restriction on access has met the requirements for a facial or as-applied challenge. *See, e.g., Press-Enterprise II*, 478 U.S. at 8-13 (challenge to a section of the California Penal Code restricting access to preliminary hearings). Rather, what matters is whether Defendants have justified the access restrictions under constitutional scrutiny. Thus, to the extent Virginia Code Section 17.1-293 purports to require Defendants to restrict remote access to new civil filings to Virginia-barred attorneys (and their staff), the requirements of the First Amendment trump that statute.

Indeed, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." Rather, the distinction "goes to the *breadth of the*

*remedy* employed by the Court." *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 331 (2010). Many First Amendment challenges have "both 'as-applied' and 'facial' characteristics," with "no obvious sense in which one predominates." *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 826 (1st Cir. 2020), *petition for cert. filed* (U.S. May 17, 2021). That is the situation here: the Amended Complaint alleges the policies, practices, and customs at issue are unconstitutional as applied to CNS and under the circumstances of this case. But it is also facial, in that CNS seeks injunctive and declaratory relief not just for themselves, but also for any other media company or member of the public that has been denied remote access to new civil filings. In any event, CNS has more than met the plausible pleading standard for both as-applied and facial challenges. There are no set of circumstances under which the unequal treatment contemplated by Virginia Code Section 17.1-293 is valid. It is not equal – and cannot be equal – when only Virginia-licensed attorneys are given remote access to court records.

A plaintiff sustains its burdens on a facial challenge by demonstrating either (i) "no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep;" or (2) "that the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (quotations and citations omitted); *see also Educ. Media Co. at Virginia Tech v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013). Under either scenario, "a court considering a facial challenge is to assess the constitutionality of the challenged law without regard to its impact on the plaintiff asserting the facial challenge." *Insley*, 731 F.3d at 298 n.5 (quotations and citations omitted). Defendants cannot claim that the current preferential access is consistent with any tradition of access in the Virginia Circuit Courts. Traditionally, everyone – including attorneys –

29

were provided exactly the same type of access to non-confidential public court records.  However, Defendants – through their policies, customs, and practices and pursuant to their interpretation of Virginia Code Section 17.1-293 – have chosen to favor Virginia-licensed attorneys and prejudice everyone else when it comes to remote access to court records.

An as-applied challenge is "based on a developed factual record and the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc).  Here, Defendants' practices, policies, and customs of refusing to allow CNS subscriber access to OCRA, relying upon Virginia Code Section 17.1-293, is unconstitutional as applied to CNS.  Defendants, through their actions, are exposing CNS to a burden and expense not suffered by Virginia-licensed attorneys.  By imposing this additional burden and expense on CNS in its attempt to access nonconfidential, public court records, Defendants are infringing a fundamental constitutional right and depriving CNS of equal protection under the law.

## CONCLUSION

Providing a system of preferred remote access to court records to just one segment of the public not only results in a discriminatory system of access, but it is contrary to basic principles of government transparency protected by the First Amendment and to equal protection protected by the Fourteenth Amendment.  Defendants' motions must be denied.

Dated: November 16, 2021                     Respectfully submitted,

   */s/ Adam L. Shaw*
Adam L. Shaw (VSB No. 89559)
Heather S. Goldman (admitted *pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1155 F Street, NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
adam.shaw@bclplaw.com
heather.goldman@bclplaw.com

Jonathan E. Ginsberg (admitted *pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
jon.ginsberg@bclplaw.com

*Counsel for Plaintiff Courthouse News Service*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day November, 2021, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to

all counsel of record.

   */s/ Adam L. Shaw*
Adam L. Shaw