IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | ) |
| *Plaintiff,* | ) |
| v. | ) Civil Action No.3:21-cv-00460-HEH |
| KARL R. HADE, *et al.*, | ) |
| *Defendant.* | ) |

**DEFENDANT JACQUELINE C. SMITH'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

COMES NOW the Defendant, Jacqueline C. Smith ("Defendant" or the "Clerk"), by counsel, hereby submits her reply to Plaintiff's opposition to her Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

**I.    The Statute**

At the heart of Plaintiff's complaint that its rights under the First and Fourteenth Amendments have been violated is its claim that it has been denied access to the system known as the Officer of the Court Remote Access ("OCRA"). Plaintiff alleges that, "[i]n denying OCRA access to [Plaintiff], the clerks of some Virginia circuit courts have relied on Virginia Code § 17.1-293(B)." *Am. Compl.,* ¶ 4. This statute creates an exception that permits remote access to licensed attorneys. *Id.* Plaintiff alleges, therefore, that Defendant—and other clerks of court in Virginia that Plaintiff has presumably not sued—have relied upon this statute in providing remote access to court filings only to attorneys and officers of the court.

There are number of statutory provisions that are relevant to Plaintiff's claims. Because certain concepts in these appear to be incorrectly conflated by Plaintiff, it is important to understand

each provision, and how they affect the claims in this case. The first relevant provision is Virginia Code §17.1-293(B), which is the part of the statute that prohibits clerks of court from posting certain information on the Internet. That provision states that

> no court clerk shall post on the Internet any document that contains the following information: (i) an actual signature, (ii) a social security number, (iii) a date of birth identified with a particular person, (iv) the maiden name of a person's parent so as to be identified with a particular person, (v) any financial account number or numbers, or (vi) the name and age of any minor child.

The specifics of this prohibition are crucial. This provision not only prevents the publication on the Internet of social security numbers and account numbers, it also restricts the publication of information that is commonly included in court pleadings without redaction, including signatures, dates of birth, and maiden names.

The next relevant provision is Virginia Code § 17.1-293(E)(7), which creates an exemption from the restrictions in that section in circumstance in which the clerk of court provides

> secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk.

It is important to distinguish "nonconfidential court records" from the type of information restricted from publication in §17.1-293(B). Specifically, nonconfidential court records may include some of the types of private information that clerks of court are restricted from publishing on the Internet. Nevertheless, such information would still be accessible at the terminals provided by the clerk of court at the clerk's office. As Plaintiff acknowledges, this is same information provided to attorneys through remote access. *Am. Compl.*, ¶ 3.

The next relevant provision is Virginia Code §8.01-420.8. This section provides, in relevant part:

> Whenever a party files, or causes to be filed, with the court a motion, pleading,

> subpoena, exhibit, or other document containing a social security number or other identification number appearing on a driver's license or other document issued under Chapter 3 (§ 46.2-300 et seq.) of Title 46.2 or the comparable law of another jurisdiction, or on a credit card, debit card, bank account, or other electronic billing and payment system, the party shall make reasonable efforts to redact all but the last four digits of the identification number.

Virginia Code §8.01-420.8(A). This provision requires redaction of social security numbers, account numbers, and the like; it does not require redaction of information such as a parent's maiden name or an actual signature. Therefore, a redaction pursuant to this section would not affect some of the information identified in Virginia Code §17.1-293(B) as being prohibited from publication on the Internet.

As a result, there will be certain information found in public court file that are not required to be redacted, but which the clerks of court are prohibited from disseminating on the Internet. This is information—including birthdates and actual signatures—that the legislature has plainly deemed to be of such a nature that it should not be easily accessible remotely by the general public.

II. **Plaintiff's First Amendment Claim**

Plaintiff frames its First Amendment claim as a restriction upon access to public court filings. But, as demonstrated by the allegations in the Amended Complaint, Plaintiff's access to these documents is not restricted in any way. Instead, Plaintiff insists that it has a First Amendment right to *remote* access to these records. Plaintiff provides no authority for this assertion. As discussed at length in Defendant's memorandum in support of her motion to dismiss, Plaintiff does not have a First Amendment right to *remote* access to court records under either the "experience and logic" test or the more relaxed scrutiny applied to limitations on the right of access that resemble "time, place, and manner" restrictions.

In asserting that the statute in question must withstand strict scrutiny, Plaintiff presumes the existence of a First Amendment right. Because no such right exists, no such scrutiny is

required.

### III.     Plaintiff's Fourteenth Amendment Claims

As discussed in Defendant's memorandum in support of her motion to dismiss, when a statute neither infringes a fundamental right nor disadvantages a suspect class, courts apply rational basis review. *Nat'l Ass'n for the Advancement of Multijurisdiction Practice (NAAMJP) v. Lynch*, 826 F.3d 191, 196 (4th Cir. 2016).  Under rational basis review, the challenged rule comes bearing a strong presumption of validity, and those attacking the rationality of the rule have the burden to negative every conceivable basis which might support it.  Plaintiff does not allege that it is in a suspect class or that there is a discriminatory animus.

The distinction in this case, as noted by Plaintiff in its opposition memorandum, is between lawyers and non-lawyers.  It is a person's status as a Virginia-licensed attorney that determines their ability to obtain remote access to court filings under the applicable statute.

Courts that have reviewed the circumstances in which non-lawyers have been treated differently than lawyers in a legal context have found a rational basis for such a distinction.  In a case limiting the right of non-lawyers to have a financial interest in a law firm, one district court observed:

> Whether lawyers and investment bankers are similarly situated in the first place is a "fact-intensive   inquiry" that the Court need not make in any depth here, for it matters not to the outcome of this claim.  Whatever similarities may exist in their day-to-day work, lawyers and investment bankers do not play the same role in the American judicial system or in the administration of justice in this country. As the Supreme Court has recognized, "will lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts." No other profession—not even investment banking—fills such a role. The judiciary and the public depend upon the "ethical conduct of attorneys," and these New York laws preventing non-lawyers from investing in law practices are rationally related to New York's legitimate—indeed its "extremely important"—"interest in maintaining and assuring the professional conduct of the attorneys it licenses."

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appelate Div. of the Supreme Court of the State of N.Y.*, 118 F. Supp. 3d 554, 580-81 (S.D.N.Y. 2015).  In a case involving the right of a non-lawyer to receive a fee for acting as an advocate in a certain tribunal, the Third Circuit affirmed a trial court's finding that a rational relationship existed for such a distinction:

> The district court reasoned that since New Jersey could ban the practice of law altogether by unlicensed persons, the state could impose restrictions on lay practitioners. The more rigorous standards of legal training, including ethical and fiduciary restraints, contrasted with the less stringent requirements expected from lay representatives also were significant factors in the court's consideration. The district court expressed concern that permitting lay advocates to charge for their representation services would encourage the proliferation of unlicensed practice to the public detriment. Accordingly, the court found that the New Jersey rule met the rational relationship test.

*Arons v. N.J. State Bd. of Educ.*, 842 F.2d 58, 63 (3d Cir. 1988)(citations omitted).  In a case involving bail bondsmen, the Fifth Circuit held:

> An equal protection claim that does not involve a suspect classification must show that the individuals involved, some of whom are allegedly treated preferentially compared to others, are similarly situated. The Equal Protection Clause prohibits dissimilar treatment of similar people . . . Even if the defendants are treating Guiles differently than attorney bondsmen regarding settlements, there has been no showing that the conduct was arbitrary or vindictive and therefore impermissible. Further, Guiles has not proven he is similarly situated to an attorney. The entirety of his argument is this: "Attorneys and non-attorney bail bondsmen are similarly situated with regard to executing bonds in Tarrant County and the Texas Occupation Code §1704.001 et seq." That conclusory statement is not enough. Consequently, the district court was correct that Guiles failed to make a claim of a constitutional violation by the named individual defendants.

*Guiles v. Tarrant Cty. Bail Bond Bd.*, 456 F. App'x 485, 488 (5th Cir. 2012) (citations omitted). The different treatment of license attorneys by the Virginia statute has a rational basis, as more fully discussed in Defendant's memorandum in support of her motion to dismiss.

For the reasons stated in this reply and in Defendant's previously filed memorandum, her motion to dismiss the Amended Complaint should be granted.

Dated: November 30, 2021.

Respectfully submitted,

  /s/ *John C. Altmiller*
John C. Altmiller, Esq., VSB No. 34902
Heather R. Steele, Esq., VSB No. 75473
Pesner Altmiller Melnick & DeMers PLC
8000 Westpark Drive, Suite 600
Tysons, VA 22102
703-506-9440 (phone)
jaltmiller@pesner.com
hsteele@pesner.com
*Counsel for Defendant Jacqueline C. Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2021, I will electronically file the foregoing Reply to Plaintiff's Opposition to Defendant Smith's Rule 12(b)(6) Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

                                                                   /s/ *John C. Altmiller*
                                                                      John C. Altmiller