IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COURTHOUSE NEWS SERVICE,      )
                              )
            Plaintiff,        )
                              )
v.                            )   Civil Action No. 3:21cv460–HEH
                              )
KARL R. HADE, *et al.*,       )
                              )
            Defendants.       )

## MEMORANDUM OPINION
(Resolving Defendants' Motions to Dismiss)

THIS MATTER is before the Court on Defendant Karl Hade's ("Defendant Hade") Motions to Dismiss (ECF Nos. 22, 24) and Defendant Jacqueline Smith's ("Defendant Smith")[1] Motion to Dismiss (ECF No. 26) all filed on October 12, 2021. Courthouse News Service ("CNS" or "Plaintiff") filed its Amended Complaint on September 14, 2021, alleging that Defendants' enforcement of two Virginia statutes violates the First Amendment of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment.[2] (Am. Compl., ECF No. 21.)

Defendants argue in their Motions to Dismiss that Plaintiff fails to state a claim upon which relief may be granted. Defendant Hade additionally argues that he enjoys sovereign immunity and thus, this Court does not have subject matter jurisdiction over him. (Def. Hade's Mem. Supp. at 4–5, ECF No. 23.) The parties have submitted

---

[1] The Court will refer to Defendant Hade and Defendant Smith collectively as "Defendants."

[2] Plaintiff's original Complaint was filed on July 15, 2021. (Compl., ECF No. 1.)

memoranda in support of their respective positions. On January 10, 2022, the Court heard oral argument on the issues, and the Motions to Dismiss are now ripe for review. For the reasons stated herein, the Court will grant the Motions as to Count Three but deny the Motions in all other respects.

## I. BACKGROUND

At its foundation, this case involves a web of Virginia statutes that govern public access to civil court records. In Virginia, the clerk of the circuit court for each county "shall have custody of and shall keep all court records . . . in their offices or at such location otherwise designated by the clerk." Va. Code § 17.1-242. In all Virginia circuit courts, clerks provide the public with access to these court records at the physical courthouse.[3] (Am. Compl. ¶ 3.) Beyond access at the courthouse, some circuit courts provide access to civil court records remotely, via the internet, on a system called "Virginia Officer of the Court Remote Access" ("OCRA"). (*Id.* ¶ 3.) It is *optional* for each circuit court clerk to have their records accessible via OCRA, but approximately 90 circuit courts do so. Va. Code § 17.1-293(E)(7); (Am. Compl. ¶ 35).

OCRA provides online access to the same civil court records that are accessible at physical courthouses. (Am. Compl. ¶ 52.) However, OCRA is subject to two important statutory limitations. First, OCRA is only accessible to Virginia-licensed attorneys, their staff, and related government officials (the "non-attorney access restriction"). Va. Code

---

[3] Those filing civil court records must redact all but the last four digits of social security numbers, driver's license numbers, and other identification numbers. Va. Code § 8.01-420.8(A).

§ 17.1-293(E)(7).[4] Second, OCRA users may not sell, post, or redistribute to a third party any "data" accessed on OCRA unless the "data" is included in a product or service created by the OCRA user and the data is not made available to the general public (the "dissemination restriction"). *Id.* § 17.1-293(H).[5]

Even so, circuit court clerks may provide the public with remote online access to civil court records via their own case management system outside of OCRA. (*Id.* § 17.1-225.) While this option is available, the Amended Complaint does not mention any circuit court that has created such a system.[6]

CNS is a nationwide news service that reports on civil cases in all 50 states

---

[4] The full text of Va. Code § 17.1-293(E)(7) reads:

> [A clerk may provide] secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk.

[5] The full text of Va. Code § 17.1-293(H) reads:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, in his discretion, may deny secure remote access to ensure compliance with these provisions. However, the data accessed by secure remote access may be included in products or services provided to a third party of the subscriber provided that (i) such data is not made available to the general public and (ii) the subscriber maintains administrative, technical, and security safeguards to protect the confidentiality, integrity, and limited availability of the data.

[6] The information a circuit court clerk may provide via a public remote access system is also more limited than the information available on OCRA. OCRA may contain documents with actual signatures, dates of birth, maiden names, and the names of minor children, while public online remote systems may not. *See* Va. Code §§ 17.1-293(B), (E)(7). Of course, filings in OCRA, or an additional system created by a circuit court clerk, would also have confidential information redacted according to Va. Code § 8.01-420.8(A); *see id.* § 17.1-293(A) (requiring full redaction in a non-OCRA online system).

3

including Virginia (Am. Compl. ¶ 24), and CNS reporters have traditionally traveled to Virginia circuit courts in each county to access the civil court records provided in physical courthouses. (*Id.* ¶ 31.) In an effort to save money and travel time, CNS asked many circuit court clerks for access to OCRA even though its staff members are not licensed attorneys. (*Id.* ¶ 64.) Every circuit court clerk denied CNS access to OCRA. (*Id.*)

Despite the statutory prohibition, the Clerk of the Circuit Court for Prince William County, Defendant Smith, offered to give CNS access to OCRA for a higher price than Virginia attorneys. (*Id.* ¶¶ 65–74.) At the hearing on January 10, 2022, however, counsel for Defendant Smith made clear that she no longer offers CNS access to OCRA and, in her opinion, the Virginia law bars her from doing so.

As CNS was seeking access to OCRA through individual circuit court clerks, it also sought access through the Office of the Executive of the Supreme Court of Virginia ("OES"). Defendant Hade is the Executive Secretary of OES. While circuit court clerks upload court records to the system and control those records, OES "operates and maintains" the servers and websites that OCRA exists on. Va. Code § 17.1-502(A); (Am. Compl. ¶ 16).

When CNS asked OES for access to OCRA, OES stated that it was not legally authorized to provide access because OCRA is limited to "members in good standing with the Virginia State Bar" and all court documents, though viewable on OCRA, are "under the custody and control of the circuit court clerks." (Am. Compl. ¶ 72.) Moreover, OCRA's website, which OES controls, states that OCRA "is intended solely

4

for the use of authorized Officer of the Court personnel . . . and [a]ll other use is expressly prohibited." (*Id.* ¶ 53.) Lastly, Robert Smith, then-Director of the Department of Judicial Information and Technology for OES and an employee of Defendant Hade, stated that it has "always been [OES'] stance that the [Va. Code] does not support providing [OCRA] to anyone other than members of the bar." (*Id.* ¶ 59.)

CNS now brings three claims via 42 U.S.C § 1983 against Defendants. First, CNS alleges that Defendants' enforcement of OCRA's non-attorney access restriction, Va. Code § 17.1-293(E)(7), violates the First Amendment (Count One). (*Id* ¶¶ 86–93.) Second, CNS alleges that Defendants' enforcement of OCRA's dissemination restriction, Va. Code § 17.1-293(H), violates the First Amendment (Count Two). (*Id.* ¶¶ 86–101.) Third, CNS alleges that Defendants discriminated against it by enforcing OCRA's non-attorney access restriction in violation of the Equal Protection Clause of the Fourteenth Amendment (Count Three). (*Id.* ¶¶ 102–107.)

## II. STANDARD OF REVIEW

First, Defendant Hade submitted a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 22.) A motion made pursuant to Rule 12(b)(1) challenges the Court's jurisdiction over the subject matter of a complaint. Such a challenge can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). For a facial challenge, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'"

5

*Id.* Defendant Hade is making a facial challenge. (Def. Hade's Reply at 2, ECF No. 37.) Thus, the familiar Rule 12(b)(6) standard of review applies to his Motion to Dismiss even though it was motioned for under Rule 12(b)(1). *See Beck*, 848 F.3d at 270.

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

First, Defendant Hade asks the Court to dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) because he enjoys sovereign immunity under the Eleventh Amendment. The Eleventh Amendment "render[s] States immune from being hauled into federal court by private parties." *Wright v. North Carolina*, 878 F.3d 256, 261 (4th Cir. 2015). State officers being sued in their official capacity receive sovereign immunity to the same extent as the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *Ex Parte Young*, 203 U.S. 123 (1908), however, creates an expansive exception to sovereign immunity where state officers may be sued in their official capacity when the plaintiff is only seeking prospective injunctive relief to remedy the enforcement of an unconstitutional statute. *Id.* at 159–60. To fit within the exception, the officer must have a "special relation" to the challenged policy or statute; and (2) the officer must have "acted or threatened" to enforce the policy or statute. *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010).

Defendant Hade argues that he has no special relation to the challenged statutes here and never acted or threatened to enforce them. Yet, the Amended Complaint contains many factual allegations to the contrary. First, when CNS asked OES for access to OCRA, OES sent a letter denying CNS access because access is limited to "members in good standing with the Virginia State Bar" and because circuit court clerks control the information in OCRA, not OES. (Am. Compl. ¶ 72; *see* OES Letter, ECF No. 21-6.) Defendant Hade argues that this letter proves he has no authority to grant anyone access to OCRA and instead circuit court clerks must grant access. Read more closely,

7

however, the letter stipulates that OES refused to grant CNS access for *two* reasons. While one of these reasons was that circuit court clerks were the ultimate controllers of all court records, the other reason was the exact issue in this case: CNS and its reporters are not Virginia-licensed attorneys. This statement creates the reasonable inference that, even if CNS received permission from a circuit court clerk to access OCRA, Defendant Hade and OES would still deny CNS access because its reporters are not attorneys. *See Tobey*, 706 F.3d at 386.

Moreover, the OCRA website, which Defendant Hade operates and maintains, states that OCRA "is intented solely for the use of authorized Officer of the Court personnel . . . and [a]ll other use is expressly prohibited." (Am. Compl. ¶ 53.) Even if CNS received permission from a circuit court clerk to access OCRA, it would still be confronted with this overt warning that, since its employees are not attorneys, its access is "expressly prohibited." (*Id.* ¶ 53.) Lastly, an OES employee, in response to a deposition question, stated that it has "always been [OES'] stance that the [Va. Code] does not support providing [OCRA] to anyone other than members of the bar." (*Id.* ¶ 59.)

Based on the Amended Complaint, even accepting Defendant Hade's argument that he does not have unilateral control over court records inside of OCRA, CNS has adequately alleged that he maintains a "special relation" to the challenged policy and has "acted or threatened" to enforce it. *McBurney*, 616 F.3d at 402.[7] Thus, the Court has subject matter jurisdiction over the claims against Defendant Hade and his Motion to

---

[7] If discovery reveals that Defendant Hade does not have any power to enforce the challenged statutes, then he may, of course, make an appropriate motion at a later stage in this case.

Dismiss will be denied.

Next, the Court turns to Defendants' Motions to Dismiss under Rule 12(b)(6). (ECF Nos. 24, 26.) In Count One, Plaintiff alleges that Defendants' enforcement of OCRA's non-attorney access restriction, Va. Code § 17.1-293(E)(7), violates the First Amendment. It is well-settled that the press and public have a right of access to most, if not all, civil court records. *See Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) (finding a right to reasonable contemporaneous access to civil complaints); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (finding right to access summary judgment documents). Federal courts and most state courts allow the public to access these civil records via an online remote system. (Pl.'s Mem. Opp'n at 23–24, ECF No. 33.) Plaintiff, however, is not alleging that the public has a fundamental right to remotely access civil court records guaranteed by the First Amendment.[8] Instead, Plaintiff argues that *if* Defendants provide Virginia attorneys remote access to civil court records, *then* the First Amendment also requires them to provide the public with remote access.

In effect, Plaintiff argues that Defendants are limiting an already established fundamental right, the right to access civil court records, in an unconstitutional manner by giving one group, Virginia lawyers, remote access while denying it to others. Strict

---

[8] If that were Plaintiff's contention, the experience and logic test would guide this Court's analysis. *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8–10 (1986); *Schaefer*, 2 F.4th at 326. While parties discuss the experience and logic test at length in their briefs, the Court need not do so here because, applying the test, the United States Court of Appeals for the Fourth Circuit has already held that the public has the right to "reasonably contemporaneous access to civil complaints." *Schaefer* 2 F.4th at 328.

scrutiny ordinarily applies to an alleged violation of the First Amendment. *Schaefer*, 2 F.4th at 328; *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 606 (1982). But when a limitation on a right of access resembles a "time, place, and manner" restriction, the Court should apply more relaxed scrutiny. *Schaefer*, 2 F.4th at 328; *Globe Newspaper*, 457 U.S. at 607 n.17. The non-attorney access restriction challenged here does not stop CNS from accessing civil court records altogether but instead controls how and when it accesses them. Thus, it resembles a time, place, and manner restriction and relaxed scrutiny applies.

In this case, relaxed scrutiny requires the limitation to be "content-neutral,[9] narrowly tailored and necessary" to preserve a "significant governmental interest." *Schaefer*, 2 F.4th at 328 (first quotation) (quoting *Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (4th Cir. 2020)); *see McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (second quotation) (describing relaxed scrutiny more generally). "A regulation is narrowly tailored under this standard if it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ross v. Early*, 746 F.3d 546, 552–53 (4th Cir. 2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781,799 (1981)).

Here, Plaintiff alleges that OCRA's non-attorney access restriction is not narrowly tailored to preserve any significant governmental interest. Defendants argue that limiting

---

[9] At this stage, the Court assumes without deciding that the non-attorney access restriction is content neutral.

10

OCRA access to Virginia attorneys allows them to more easily police misuses of the confidential or private information contained therein. Yet, as alleged by Plaintiff, OCRA contains identical court records that are already available to the public at physical courthouses. (*Id.* ¶ 52.) Moreover, Plaintiff alleges that all users of OCRA also must sign "Subscriber Agreements" which could also be used by Defendants to police misuse of OCRA. (*Id.* ¶ 44.)

These allegations could lead to the reasonable inference that the non-attorney access restriction is not narrowly tailored to preserve a significant governmental interest and thus, could violate the First Amendment. *See Tobey*, 706 F.3d at 386. Of course, allegations are only allegations. Through discovery, the parties may be able to solidify the contours of the government's interests in enforcing the non-attorney access restriction and the burdens placed on the public. *See Ross*, 746 F.3d at 552–53. But on a Motion to Dismiss under Rule 12(b)(6), the Court must accept all of Plaintiff's allegations as true. *Nemet Chevrolet, Ltd.*, 591 F.3d at 250. For these reasons, the Court will deny Defendants' Motions to Dismiss Count One of the Amended Complaint.

In Count Two, Plaintiff alleges that Defendants' enforcement of OCRA's dissemination restriction, Va. Code § 17.1-293(H), violates the First Amendment. Defendants' only argument for dismissing Count Two is premised on the Court finding that Count One does not state a claim. Because the Court finds that Count One does state a claim, Count Two similarly survives. The Court will deny Defendants' Motion to Dismiss Count Two of the Amended Complaint.

Lastly, in Count Three, Plaintiff alleges that Defendants discriminated against it

11

by enforcing OCRA's non-attorney access restriction in violation of the Equal Protection Clause of the Fourteenth Amendment. To allege a violation of the Equal Protection Clause, a plaintiff must demonstrate "that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). The parties do not dispute that CNS and Virginia attorneys are similarly situated. The Amended Complaint also sufficiently alleges Defendants' discriminatory animus because the statute at issue explicitly limits OCRA access to Virginia attorneys. *Morrison v. Garraghty*, 239 F.3d 648, 657 (2001) (finding discriminatory animus where prison policy overtly treats Native-Americans differently).

After a plaintiff proves he was intentionally discriminated against, the court must apply the appropriate level of scrutiny. *Id.* at 654. Strict scrutiny applies when a fundamental right or suspect class is involved. *Id.* Non-attorneys are not a suspect class. *Id.* (listing race, alienage, or national origin as suspect classifications); *Equity in Athletics*, 639 F.3d at 104 (listing sex as a suspect classification). Moreover, as noted above, Plaintiff does not argue that there is any fundamental right to access civil court records *remotely*. Thus, strict scrutiny does not apply, and Defendants need only show that their discrimination is "rationally related to a legitimate state interest." *Id.*; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985).

Under rational basis review, the restriction "must be afforded 'a strong presumption of validity,' and 'those attacking the rationality of the [statute] have the burden to negative *every conceivable basis* which might support it.'" *Int'l Refugee*

12

*Assistance Project v. Trump*, 961 F.3d 635, 651 (4th Cir. 2020) (emphasis in original) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993)). The Court "hardly ever strikes down a policy as illegitimate under rational basis review." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018); *Refugee Assistance Project*, 961 F.3d at 651 (applying the same language at the motion to dismiss stage).

Here, Defendants point to at least one legitimate interest of the government: protecting confidential and private information contained in the civil court records. While Plaintiff adequately alleges that this interest may not be "significant" and "narrowly tailored" under a First Amendment framework, *McCullen*, 573 U.S. at 477, the Amended Complaint does not contain any factual allegations that the government's interest is implausible or lacks all rationality. *See City of Cleburne*, 473 U.S. at 448. It is, at a minimum, *rational* to believe that limiting OCRA access to attorneys would protect confidential and private information because attorneys are more easily regulated by the court system. Thus, the Court finds that Count Three does not state a claim for which relief may be granted under the Equal Protection Clause. The Court will grant Defendants' Motions to Dismiss as to Count Three.

## IV.   CONCLUSION

The Court finds that Plaintiff's Amended Complaint adequately alleges that Defendant Hade was empowered to enforce the statutes at issue and, therefore, Defendant Hade does not enjoy sovereign immunity. Thus, the Court will deny Defendant Hade's Motion to Dismiss. (ECF No. 22.) Further, the Court finds that the Amended Complaint sufficiently states a claim for relief in Counts One and Two but fails to state a claim for

relief in Count Three. Accordingly, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 24, 26) as to Count Three but deny the Motions as to Counts One and Two.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: January 14, 2022
Richmond, Virginia