# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:21cv460-HEH |
| ) | |
| KARL R. HADE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT JACQUELINE C. SMITH'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Jacqueline C. Smith ("Defendant" or the "Clerk"), by counsel, and hereby submits this memorandum of law in opposition to Plaintiff's Motion for Summary Judgment.

## DISPUTED FACTS

Pursuant to Local Rule 56, the following undisputed facts set forth in Plaintiff's memorandum are not admitted by Defendant:

Plaintiff's Undisputed Fact 7 states: "And CNS' reporters observe ethical proscriptions precluding inclusion of confidential information and personal identifiers in any of CNS' publications." This statement does not indicate what precisely are the ethical proscriptions to which CNS is referring, or what the declarant's foundations are for this conclusion.

Plaintiff's Undisputed Fact 14 states: "The filings on AJIS are available to any subscribing member of the press or public, and those filings are the same records available at the courthouse." It is not clear that the declarant has sufficient foundation to attest to the fact that every filing available on the AJIS system is the same as the records available at the courthouse.

Plaintiff's Undisputed Fact 29 states: "The Prince William Clerk currently has 274 paying private, i.e., attorney, OCRA subscribers, meaning the Clerk collects at least $54,800 in annual subscriber fees, despite only paying an annual maintenance fee of $9,500." Although it is true that the Clerk pays the amount of $9,500 annually as a maintenance fee in connection with its use of OCRA, that is not the only expense that the Clerk incurs in connection with its processing of civil filings and their placement in the OCRA system, contrary to what this statement implies.

Plaintiff's Undisputed Fact 33 states: "OES notes made in connection with the 2018 Work Group Report reflect its view that no authority may exist for clerks' concerns that non-attorney OCRA users could scrape data." Although it is certainly true that OES made notes that reflect their opinion in this regard, this is not an undisputed fact. At best, it is an unsubstantiated opinion; at worst, it is simply hearsay.

## ARGUMENT

### A. <u>Plaintiff's Reliance upon *Press-Enterprise II* Is Misplaced</u>

Plaintiff relies heavily upon the Supreme Court's decision in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735 (1986). However, both the facts of that case and the test articulated by the Court in its opinion have very limited applicability in this case. *Press-Enterprise II* involved access to the transcript of a preliminary hearing in a criminal case. The hearing itself had been closed to the public, and a newspaper publisher sought access to a transcript of the hearing. After the magistrate holding the hearing refused to grant access to the transcript, the state, later joined by the publisher, moved to have the transcript released. When the court ultimately refused to grant the publisher's writ of mandamus, the Supreme Court reversed. The issue in that case was access to the proceeding—not the time, place, or manner in which that access would be provided. The issue before the Supreme Court was therefore whether access to the

2

transcript could be completely denied.

In this case, Plaintiff is not being denied access to the civil filings at issue. Plaintiff is not even being denied contemporaneous access to the information sought. It is for this reason that this Court previously ruled that any restriction in this case resembled time, place, and manner, and was therefore subject to relaxed scrutiny. This distinction is crucial. There is no dispute between the parties that Plaintiff has a First Amendment right of access to the filings generally. Furthermore, as noted by this Court in its prior Memorandum Opinion, Plaintiff "is not alleging that the public has a fundamental right to remotely access civil court records guaranteed by the First Amendment." (ECF No. 48). "Instead, Plaintiff argues that *if* Defendants provide Virginia attorneys remote access to civil court records, *then* the First Amendment also requires them to provide the public with remote access." *Id.* (emphasis in original). Therefore the standard set forth in *Press-Enterprise II* is not applicable here; rather, the relaxed scrutiny standard articulated in *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982) is the appropriate test to be employed.

The type or manner of access being provided—as distinguished from a complete closure from access—informs the entire analysis in this case. As the Ninth Circuit observed in another case involving Plaintiff:

> Even in this era of electronic filing systems, instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged. After all, litigants are not uploading their complaints to the internet; they are filing them with a court, making them subject to judicial administration. The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press.

*Courthouse News Serv. v. Planet*, 947 F.3d 581, 596 (9th Cir. 2020). As another court observed, "[t]he qualified right of access does 'not require perfect or instantaneous access,' but it does require

3

contemporaneous access -- something in line with what the press has traditionally enjoyed." *Courthouse News Serv. v. N.M. Admin. Office of the Courts*, 566 F. Supp. 3d 1121, 1171 (D.N.M. 2021).

### B. Providing Remote Access to Attorneys—But Not to the General Public—Is Constitutional under the Relaxed Scrutiny Standard.

The Court held in its prior Memorandum Opinion that "[t]he non-attorney access restriction challenged here does not stop CNS from accessing civil court records altogether but instead controls how and when it accesses them," and that it therefore "resembles a time, place, and manner restriction and relaxed scrutiny applies." (ECF No. 48). As set forth in more detail in Defendant's memorandum in support of her motion for summary judgment, the remote access provided by the Clerk to attorneys—but not to the general public—passes constitutional muster under the relaxed scrutiny standard. Defendant expressly incorporates the arguments in her memorandum in support of her motion for summary judgment herein, particularly as they relate to the significant government interests in play in this case, and the fact that the statutes at issue are narrowly tailored to promote those significant governmental interests. As set forth in Defendant's memorandum in support, the statutes at issue in this case promote the significant governmental interests of protecting the private information of litigants and the efficient and orderly administration of the court system.

Plaintiff's memorandum also contains certain specific arguments that Defendant will now address in turn.

### C. The Fact That the Clerk Has Not Historically Tracked the Number of Filings That Contain Information Identified in Virginia Code §17.1-293(B) Does Not Automatically Mean That She Has Not Met Her Burden with Respect to an Analysis under the Relaxed Scrutiny Standard.

Plaintiff argues that because the Clerk is unable to provide the number of filings in each of the last five years that contained the information identified in Va. Code § 17.1-293(B) (because that information sought is not tracked by the Clerk or any other group), the Clerk is therefore unable to meet her burden under the relaxed scrutiny standard. Taken at face value, the implication is that the statutory regime at issue, and the Clerk's compliance with the applicable statutes, can only survive a constitutional challenge if the Clerk (or some other governmental entity) anticipated years ago that Plaintiff would file this lawsuit and seek the specific discovery request in question. Essentially, the contention appears to be that Defendant's position in this case was doomed long before the case was filed by her inability to anticipate the current litigation.

**D. The Prohibitions Contained in Virginia Code §17.1-293 Apply to Secure Remote Access.**

Plaintiff asserts that Va. Code § 17.1-293(B) "merely prohibits court clerks from posting generally 'on the Internet' (as opposed to a secured permission-based subscriber system) certain personal identifiers." Although Plaintiff does not expand upon this argument, it appears to be arguing that providing information remotely over the Internet is not the same thing as posting information "on the Internet." The Internet is defined as "an electronic communications network that connects computer networks and organizational computer facilities around the world." *See* https://www.merriam-webster.com/dictionary/Internet. The Internet is also defined in Virginia Code §17.1-292 as "the international computer network of interoperable packet-switched data networks."

Neither Virginia Code nor the dictionary have limited the definition of Internet to exclude permission-based subscriber networks. No remote access system can exist without being part of, and making use of, the Internet. Any remote access will involve the use of Internet protocols and

5

Internet addresses, and will require an Internet connection in order to utilize the remote access. Without the Internet there is no remote access. The suggestion that §17.1-293 (B) has no applicability to secure remote access ignores the fact that such access must employ the Internet.

E. **There Is No Enforceable Obligation on the Filing Party (or the Clerk) to Redact Any Confidential Information in Court Filings.**

Plaintiff asserts that "the filing party is required to redact much of the information Defendants are concerned about, *i.e.*, social security numbers and financial account numbers, *see* Va. Code § 8.01-420.8(A), a less restrictive alternative is already in place with respect to this particular information." This is not strictly accurate. As noted in Defendant's memorandum in support of its motion for summary judgment, the statute does not require filers to redact, but instead simply requires them to make an effort to do so. The statute specifically states that "the party shall make reasonable efforts to redact." Va. Code Ann. § 8.01-420.8. There is no actual consequence for failing to redact. The statute specifically states that "[n]othing in this section shall create a private cause of action against the party or lawyer who filed the document or any court personnel, the clerk, or any employees of the clerk's office who received it for filing." Va. Code Ann. § 8.01-420.8. Because there is no enforceable obligation on the filing party, the redaction efforts of the filing party are not sufficiently reliable to promote the significant governmental interest of protecting the litigants' private information, and thus the redaction efforts of the filing party cannot constitute a "less restrictive alternative" as Plaintiff suggests.

## CONCLUSION

On the basis of the foregoing, the Court should deny Plaintiff's Motion for Summary Judgment.

Dated: August 1, 2022.

Respectfully submitted,

   */s/ Heather R. Steele*
John C. Altmiller, Esq., VSB No. 34902
Heather R. Steele, Esq., VSB No. 75473
Pesner Altmiller Melnick DeMers & Steele PLC
8000 Westpark Drive, Suite 600
Tysons, VA 22102
703-506-9440 (phone)
jaltmiller@pesner.com
hsteele@pesner.com
*Counsel for Defendant Jacqueline C. Smith*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of August, 2022, I will electronically file the foregoing Memorandum in Opposition to Plaintiff CNS's Rule 56 Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

   */s/ Heather R. Steele*
   Heather R. Steele